HIGGINS, Justice.
 

 This is a petitory action by the lessee of an oil and gas lease against alleged trespassers claiming the exclusive right to possession of the land for the purpose of taking therefrom the oil and gas deposits, and the right to possession and ownership of the oil well drilled by defendants, and the oil said to have been illegally taken by the defendants from the property, and for an accounting of the oil that the defendants obtained therefrom and sold.
 

 The defendants filed exceptions of no right or cause of action on the ground that the plaintiff, having alleged, that it was a lessee, was without any legal right to institute a petitory action, since it did not have a real right in the realty and had not sued as the owner of the property, and the
 
 *195
 
 owner of the land had not joined the plaintiff in bringing the suit.
 

 The district judge sustained the exceptions for the reason that, under the law, the lessee has no right to bring a petitory action, this right being reserved by law to the owner of the land or to those who have a real right therein; and that a lessee of a mineral and oil lease, like a lessee under an ordinary lease of real property, lias no real right in the land upon which the lease is effective.
 

 Plaintiff then filed a second petitory action for the same purpose as the first one, joining the owner of the property as a party defendant, and alleging that it was an obligee or creditor of the owner of the land, or lessor, and, as such, had the right to assert the petitory action in its own right and name, upon the owner’s refusal to institute the suit or join the lessee in doing so, the lessor having warranted lessee the peaceful possession of the land and the sole and exclusive right to go upon the same and take therefrom the gas and oil deposits.
 

 The defendants again filed exceptions of no right or cause of action on the ground previously urged, and also for the reason that only obligees or creditors of liquidated money debts or demands, such as a judgment creditor, have the right to institute petitory actions under our jurisprudence, in order to satisfy or pay the amount due them by the defaulting and financially embarrassed debtor.
 

 The trial judge sustained the exceptions upon both points urged.
 

 Plaintiff appealed from the adverse judgments in both cases, which we consolidated here for hearing.
 

 We may say that this litigation was before us on two previous occasions, first when the trial judge refused to grant a suspensive appeal (No. 33836 of the docket of this court), and, second, on motion to remand the case, 185 La. 143, 168 So. 755.
 

 Articles 5 and 45 of the Code of Practice read, respectively, as follows:
 

 “5. The petitory action is that by which he who has the property of a real estate, or of a right upon or growing out of it, proceeds against the person having the possession, in order to obtain the possession of the immovable property, or the enjoyment of the rights upon it, to which he is entitled.”
 

 “45. The petitory action may be brought by one who has the ownership only of an undivided part of an estate, or of a real right to which such an estate is subjected, though his ownership may be limited to a certain period, or end by the occurrence of a certain event.”
 

 The first question to be determined is whether or not a lessee in a mineral lease has, by virtue of the lease, such a real right in the land as to entitle him, in his own right, to maintain a petitory action to recover possession of the leased premises?
 

 At the outset, it might be well to emphasize the fact that plaintiff is claiming only as a lessee under a contract of lease and not under a contract of sale, or sale of the mineral rights, or a sale of the land, with reservation of the mineral rights. This dis
 
 *197
 
 tinction must be noted, in order to avoid confusion in analyzing the cases on this subject. There is a vital difference between a conveyance or reservation of the mineral rights and a grant of the right to the use or enjoyment thereof. R.C.C. arts. 1904, 2449, and 2671.
 

 On several occasions this court has decided that the usual oil and gas lease, with a cash or royalty consideration, or both, such as presently before us, is a contract of letting and hiring within the meaning of the codal articles, and therefore does not create a servitude on the realty or a real right in the land. Cooke v. Gulf Refining Co., 127 La. 592, 53 So. 874; Rives v. Gulf Refining Co., 133 La. 178, 62 So. 623; Cooke v. Gulf Refining Co., 135 La. 609, 65 So. 758; Gulf Refining Co. v. Hayne, 138 La. 555, 70 So. 509, L.R.A.1916D, 1147, Ann. Cas.1917D, 130; Spence v. Lucas, 138 La. 763, 70 So. 796; Hennen’s Digest, vol. 1, 479, 480; Allen v. Shreveport Mutual Bldg. Ass’n, 183 La. 521, 525, 164 So. 328; and articles 2669, 2670, 2671, 2674, 2679 of the Revised Civil Code.
 

 On the other hand, in all those cases in which there had been a sale or conveyance of the mineral rights or a sale or conveyance of the land, with reservation of the mineral rights, this court held that the legal effect produced by such a transfer was a right of servitude on the realty or a real right in the land. Holladay v. Darby, 177 La. 297, 148 So. 55; Gayoso Co. v. Arkansas National Gas Corp., 176 La. 333, 145 So. 677; Palmer Corp. v. Moore, 171 La. 774, 132 So. 229; Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., 151 La. 361, 91 So. 765; Frost-Johnson Lumber Co. v. Sailing’s Heirs, 150 La. 756, 91 So. 207, 208. See, also Tulane Law Review vol. 9, No. 2, p. 275.
 

 It is elementary that a sale is fundamentally different from a lease. The former transfers ownership which includes both title and the right to possession. The latter grants only the use and enjoyment of the thing leased. Consequently, the courts were compelled to classify the rights flowing from such transactions according to the divisions made by the articles of the Civil 'Code and the Code of Practice on the subjects of “Sales” and “Leases.”
 

 The lessee in the usual mineral and oil lease based upon a cash or royalty consideration, or both, merely obtains an obligatory or personal right but not a real right —a jus in re. Therefore he is in the same position as an ordinary lessee of realty and is not entitled to institute a petitory action in his own right. Leightsey v. Welch, 158 La. 1024, 105 So. 51; article 48, Code of Practice; Civil Code, arts. 2696, 2704, 2703, 3556; Hoffman v. Laurans, 18 La. 70; Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264; Rojas & Conner v. Seeger, 122 La. 218, 47 So. 532; Fox v. McKee, 31 La. Ann. 67; Young v. Chamberlin, 14 La.Ann. 687. These views are in accord with both the Roman and civil law. Sohm’s Institutes (Ledlie) 307-309, 358; Traite du Droit de Domaine de Propriete, No. 1 (Bugnet’s Edition, 1846) ; Marcade vol. 6, 458; Troplong, Droit Civil Explique, No. 273, de Louage; Baudry-Lacantinerie et Wahl (3d Ed.) 305, de Louage; Laurent, Cours de Droit Civil, vol.
 
 *199
 
 3, 489, 490; Domante, Cours de Droit Civil, vol. III, 200, No. 416; Aubry et Rau, Cours de
 
 Droit
 
 Francais, vol. V, § 366, 304, 305; Works of Pothier, vol. 4, 27; Code Napoleon, arts. 1725, 1727; Louisiana Civil Code, arts. 2703, 2704.
 

 Counsel for the plaintiff contends that this court has held “in a long line of decisions, that the owner of an oil and gas lease, differently from the ordinary lessee, has a real right, equivalent to, if not actually, a servitude,” citing Noble v. Plouf, 154 La. 429, 97 So. 599; Exchange National Bank v. Head, 155 La. 309, 99 So. 272; American. Nat. Bank of Shreveport v. Reclamation Oil Producing Ass’n of La. et al., 156 La. 652, 101 So. 10; Vander Sluys v. Finfrock, 158 La. 175, 103 So. 730; Arent v. Hunter, 171 La. 1059, 1072, 133 So. 157; Federal Land Bank v. Mulhern, 180 La. 627, 157 So. 370, 95 A.L.R. 948; State ex rel. Bush et al. v. United G. P. S. Co. et al., 185 La. 496, 169 So. 523.
 

 There are expressions in these cases to the effect that the lessee of an oil and gas or mineral lease has a real right, or right in the nature of a servitude or a servitude on the land. It will be noted that in some of the cases the landowners sold the mineral rights to the purchasers, or the owners of the land reserved the mineral rights when they sold the land. As we have already pointed out, such transfers create in the owners of the mineral rights a real right, or a servitude. Therefore the statements by the court in those cases that the owners of the mineral rights had a real right or servitude are correct. But, in the cases where' the usual oil and gas or mineral lease was involved and the court termed the lessee’s right as a real right in the realty, or a servitude on the land, those expressions were obiter dicta or unnecessary to the decision. The inadvertent statements resulted from failing to make the distinction between leases and sales or reservations of mineral rights, and, as we have already stated, was necessary. They cannot be treated indiscriminately or synonomously. We stress the fact that in every instance where the court had squarely before it the juridical nature or the proper legal classification of a mineral, oil, and gas lease the conclusion was reached that it was a contract of letting and hiring, and therefore did not create a real right in the land, or right of servitude on the property.
 

 Oil and gas are fugitive minerals, and the owners of the lands which contain such deposits are not the owners of the oil and gas until they reduce these fugitive minerals to actual possession. The owners of land have a real right in their property to go upon it and explore it for these minerals, in order to gain ownership thereof by securing possession of them. Federal Land Bank v. Mulhern, 180 La. 627, 157 So. 370, 95 A.L.R. 948, and Frost-Johnson Lumber Co. v. Sailing’s Heirs et al., 150 La. 756, 91 So. 207. They may sell this real right separate from the fee of the realty, or reserve this real right when they sell the land, and, in both instances, a real right in the land exists. They may lease this right to a third person who obtains thereby a personal right. See authorities supra.
 

 Now it is said that a lease upon land for the drilling for oil and gas, fugi
 
 *201
 
 tive minerals, is so basically different from a lease on realty for raising crops that the two kinds of leases should'not be legally treated the same. Are they so different? They are granted by the owner in connection with his land for a consideration consisting of cash or part of the production therefrom, or both. The oil and gas lessee gets the products from under the surface of the ground and the lessee of a farm or plantation harvests the crops from the surface of the earth. They both get title to the products. Neither claims ownership of the land, and each is entitled to the use and enjoyment of the property for the purposes for which it was leased. In fact, it is easier to see greater similarity between an oil and gas lease and the lease of a farm than the lease of a building and a farm lease. Yet the latter are classified the same. It therefore appears to us that an oil and gas lease and farm lease are quite alike and should be placed in the same legal category, i. e., leases — personal rights and not real rights.
 

 We are of the opinion that the trial judge correctly sustained the exceptions of no right or cause of action in the first suit.
 

 Our conclusion with reference to the first case makes it unnecessary to consider the same point raised in the second petitory action, and we shall therefore pass to a consideration of whether the lessee, as the obligee or creditor of the lessor and owner, can institute a petitory action in his own right, for the purpose of obtaining possession of the leased premises, when the lessor fails, or refuses to do so.
 

 Our learned brother below, in his written reasons for judgment, disposes of this issue as follows:
 

 “Plaintiff’s position in this case is that since Anding executed a lease to it on the entire property, he obligated himself to deliver the entire property, and undertook to maintain plaintiff in peaceful possession, failing to do this, plaintiff may institute and prosecute a petitory action against the trespasser in the capacity of a creditor of Anding, and in this suit stand in the place of Anding.
 

 “The real question before the Court in this case is — can a lessee insinuate himself into lessor’s position in order to contest the title to lessor’s real property with third persons.
 

 “Plaintiff in this case has cited and relies to a large extent on the general proposition of law that:
 

 “ ‘There is no right without an appropriate remedy,’ and in support of its position has cited the following cases, which it maintains are authority for the creditor to maintain a petitory action in the place of the debtor.
 

 “The first case cited is New Orleans v. Christmas, 131 U.S. 191, 9 S.Ct. 745, 33 L. Ed. 99. In this case, after exhaustive litigation which had established her claim to certain lands within the City of New Orleans which the city had formerly acquired and sold, the court of equity held that the plaintiff recovering the property from the grantee of the City, and being also entitled to the rents and revenues, might proceed against the city as a guarantor who
 
 *203
 
 possessed in bad faith. The Federal Court borrowed the term ‘creditor’ from article 1166 of the Code Napoleon, which Article specifically gave a creditor the right to proceed to recover property of his debtors, but which article was omitted from the Louisiana Code. The Federal Court went so far as to say that although in an equity proceedings such procedure might be possible, the weight of authority was clearly against the same. It is certain that this case could not be considered as binding on the Louisiana courts.
 

 “In the case of Spencer v. Goodman, 33 La.Ann. 898, the court held that a judgment creditor holding a recorded judicial mortgage against property in which an insolvent creditor had a real right (or title) may institute action for the recovery of the property (a petitory action). However, at least two and possibly three things are essential under the state of facts in this case:
 

 “1.
 
 A
 
 money judgment.
 

 “2.
 
 An insolvent creditor (debtor).
 

 ■“3. Probably a recorded judicial mortgage.
 

 “The case of Jack v. Harrison, 34 La. Ann. 736, next cited, is a case wherein a seizing judgment creditor successfully attacked an adverse claimant who possessed purely a simulated judgment.
 

 “In the case of Forstall v. Consolidated Association, 34 La.Ann. 770, 775, as obiter the court held that the (money creditor) bond holder might exercise all the rights which his debtor might have exercised.
 

 “In Klotz v. Macready, 44 La.Ann. 166, 167, 10 So. 706, the court held that a mortgage creditor might have another mortgage cancelled, where the same had been paid but the party had refused to have the cancellation recorded, the court holding that the right of a mortgage creditor was a real right or a right of property.
 

 “In Belcher & Creswell v. Johnson, 114 La. 640, 38 So. 481, the court held that a judgment creditor might sue to rescind a sale for lesion, the allegation of the petition being that the debtor had no other property from which the debt could be collected.
 

 “It is the contention of plaintiff in this case that if the judgment creditor can maintain the action shown in the cases just referred to, then certainly a lessee to whom the lessor has warranted peaceable possession must be entitled to enforce the lessor’s right. In the opinion of this court, this conclusion does not logically follow from the above cases. It will be noted that running through each of the cases cited by plaintiff is the fundamental idea of a money creditor recovering his debt from the estate of a defaulting and insolvent debtor. In the present case we are not confronted with that factual set up. According to the allegations of the petition, which for the purpose of this exception must be accepted as true, the lessee has been disturbed in possession. It is not necessary for us to go to the general rule of law to determine the lessee’s right under these conditions. Articles 2703 and 2704 of the Civil Code provide what the lessee may do:
 

 “ ‘2703. Disturbance of possession by third persons — Rights and liabilities. — The lessor is not bound to guarantee the lessee
 
 *205
 
 ■against disturbances caused by persons not •claiming any right to the premises; but in ■that case the lessee has a right of action for damages sustained against the person •occasioning such disturbance.’
 

 “ ‘2704. Possession disturbed by third -persons — Lessee calling lessor in warranty. —If the persons by whom those acts of disturbance have been committed, pretend to have a right to the thing leased, or if the lessee is cited to appear before a court •of justice to answer to the complaint of the person thus claiming the whole or a part of the thing leased, or claiming some servitude •on the same, he shall call the lessor in warranty, and shall be dismissed from the suit if he wishes it, by naming the person under whose rights he possesses.’
 

 “Article 2696 provides the liability of the lessor in the event of eviction of the lessee:
 

 “ ‘2696. Eviction of lessee — Liability of lessor. — If the lessee be evicted, the lessor is answerable for the damage and loss whjch he sustained by the interruption of the lease.’
 

 “These Articles of the Civil Code have been definitely interpreted by the courts of this State, and recently in the case of Leightsey v. Welch, 158 La. 1024, 105 So. 51, wherein the Court held, where the les•see instituted suit against an adverse possessor, that:
 

 “ ‘A tenant, when disturbed even in the actual possession of real estate, or even when expelled, is not entitled to a possessory action, but must look to his lessor for relief.’
 

 “Further in line with the same, in Young v. Chamberlin, 14 La.Ann. 687; Fox v. McKee, 31 La.Ann. 67; and Rojas & Conner v. Seeger, 122 La. 218, 47 So. 532.
 

 “We have been unable to find any case which differentiates oil, gas and mineral leases from the general rule laid down in the above articles of the Civil Code, and as interpreted by the court in the above cases.
 

 “It is the opinion of this court that the plaintiff can not, under the general warranty clause of lease, assume the name of creditor, push the owner of real property aside in order to contest the title to the lessor’s property with third persons. The lessee holds only under the lessor and, as stated in the above cases, must look to his lessor for any relief for interruption of or interference with his possession.
 

 “A lessee disturbed in possession or evicted from a part of the leased property may recover damages for the loss which he has sustained by the disturbance, from his lessor. — Article 2696 of the Civil Code. Or a lessee made defendant in a suit by a third person claiming title to the property may call his lessor in warranty, or the lessee may sue his lessor for specific performance of his contract, that is, to be placed in possession of the property.
 

 “In the present case plaintiff claims to have been disturbed in its possession of the leased property, but that disturbance was an actual disturbance or eviction. Plaintiff was not made defendant in an action by a third person claiming,title to the property, and consequently under the law of Louisiana can not call his lessor in warranty.
 

 
 *207
 
 “The law of Louisiana is clear that the lessee, as plaintiff, can not call the lessor in warranty, and the reason for the rule is clear, that is the lessee can not institute a suit without the consent of the lessor and call upon the lessor to defend the suit.
 

 “It is clear from the nature of the action in this case that the adverse possessors are claiming title to the property in question, and therefore the lessor is unable to specifically perform his contract and deliver possession of the property.”
 

 It may be noted that in the case of New Orleans v. Christmas, 131 U.S. 191, 9 S.Ct. 745, 33 L.Ed. 99, supra, there was a money judgment in favor of the owner of the property and a defaulting debtor. The case is not in point here.
 

 The only authority which counsel for plaintiff cites in his brief, holding that a lessee has the right, as obligee or creditor, to file a petitory suit in his own right, is the French Commentator, Baudry-Lacantinerie’s “Treaties on Lease,” No. 543. But even this renowned author recognized the fact that the other distinguished French commentators were of the view that the lessee only had a personal right and not a real right. He cites, as contrary to his own view, two decisions, one by the Cours de Cassation, 18 janvier-1893, reported in Sirey, V. 93, 1.237, and another by the Tribunat Civil de Toulouse, 21 mars 1894, Gaz. Triv. Midi, 29 avril 1894. The author does not cite any other writer or court in accord with his conclusion. But, as opposed to his views, he cites Guillouard, I, n. 22 and 29, and Aubry et Rau, 11, p. 224, § 187, note 5. Later authorities opposed to the theory expressed by Baudry-Lacantinerie are Planiol et Ripert, Traite Pratique de Droit Civil Francais, vol. 10, No. 547; Civ. 4 juin 1904, D. 1904, 1,475.
 

 Baudry’s dictum is founded upon article 1166 of the Code Napoleon, which was not adopted by the compilers of the Louisiana Code. The article reads as follows:
 

 “Nevertheless creditors may exercise all the rights and actions of their debtors, with the exception of those which are exclusively attached to the person. * * * ”
 

 Baudry’s compatriots do not give this article the sweeping 'application that he does. The French authorities agree with the exception of Baudry, that the article contemplates an exigible debt, i. e., a liquidated money claim. See Marcade, vol. 4, p. 398.
 

 In volume 4, No. 493, at pages 399, 400, Marcade makes the observation that article 1166 of the Code Napoleon is merely an application of the general principle of articles 2092 and 2093 (R.C.C. of La., arts. 3182 and 3183), declaring that whosoever binds himself is obliged to fulfill his obligation, and that all of the property of the debtor is the pledge of his creditors. The author states:
 

 “The proof that the legislature has always regarded our article (1166) but an application of the principle of article 2092 and 2093 is to be found in the explanatory statements themselves (1’' exposé meme des motifs). From these we read, in effect that ‘if the creditors are to be permitted to act directly, it is because of the fact that he who contracts debts pledges all" of his
 
 *209
 
 property’ and that the ‘pledge would be illusory if he would neglect to exercise his rights (Fenet XIII, p. 238).’ Such has always been, in effect, the doctrine of the Roman law and our own ancient laws.”
 

 Baudry-Lacantinerie does not take issue with this view expressed by Marcade. Baudry-Lacantinerie et Barde, vol. 1 (3d Ed.) p. 592, § 590.
 

 Articles 2092 and 2093 of the Code of Napoleon found in Cachard’s Translation, Rev.Ed., literally transposed into the Louisiana Civil Code as articles 3182 and 3183, read as follows:
 

 “3182. Whoever has bound himself personally, is obliged to fulfill his engagements out of all his property, movable and immovable, present and future.
 

 “3183. The property of the debtor is the common pledge of his creditors, and the proceeds of its sale must be distributed among them ratably, unless there exist among the creditors some lawful causes of preference.”
 

 These articles of the Code Napoleon and the corresponding articles of the Civil Code are found under the titles that deal with privileges. It is clear that privileges are concerned only with money debts or claims. Both Codes define privileges, as follows:
 

 “Privilege is a right, which the nature of a debt gives to a creditor, and which entitles him to be preferred before other creditors, even those who have mortgages.” La.R.C.C. art. 3186.
 

 It logically follows that articles 3182 and 3183 of the Louisiana Civil Code; being literal translations of articles 2092 and 2093 of the Code Napoleon, as the above-quoted law writers pointed out, are designed to secure to creditors the payment of their “money debts.” It is only money creditors, even under the liberal provisions of the French article 1166, who have a common pledge on the property of the debtors, who can exercise the rights and actions of the debtors.
 

 Articles 1*990, 3182, and 3183, R.C.C., therefore, do not authorize the granting of specific relief such .as the maintenance of a petitory action by a lessee against a third person in possession of the property.
 

 This is also borne out by the statement we find in Aubry et Rau, vol. 11, p. 224, § 187:
 

 “The persons who possess only for another, and who do not exercise in their own name any right other than a personal right of using or enjoying, are without capacity to complain (of disturbances by third persons) . Such are the land tenant, the lessee, the creditor under anticresis, and according to our opinion, the holder of emphyteutic rights.”
 

 In support of this quotation, Aubry and Rau cite the following authorities: Carre, Competence, II, 410; Carou, No. 238; Zachariae, § 190, text and note 4; Guillouard, du Louage, vol. 1, No. 162.
 

 The French commentators point out that, the dominant idea behind the right of action given to a creditor is the satisfaction of a debt, and not specific relief such as is sought in this case. We find this statement in Laurent, Droit Civil, vol. 16, No. 393, p. 451:
 

 
 *211
 
 “The right of pledge of article 2093 is not a real right, it gives no actual right to the creditors upon the property of their debtor. It is only when the debtor does not satisfy his engagements that the creditors can seize his property. Therefore, there is only a' right of pledge when the creditor acts against his debtor and the latter does not pay.”
 

 Duranton, Droit Civil, vol. 10, p. 529, No. 550, states:
 

 “And if a third person is in possession ■of immovable property belonging to my debtor, or upon which I pretend that the latter has rights, I could also exercise the right of revendication, acting in the name ■of the latter; reserving to the third person the right to prevent my action or arrest its ■course if it seems good to him, by paying my debt without interest.”
 

 To the same effect we quote the following excerpt from the discussion of the action .granted by article 1166 of the Code Napoleon in Aubry et Rau, Cours de Droit -Civil Francais, § 312, note 3:
 

 “Consequently, the third party defendant can always avoid the action of the creditor by reimbursing him the amount of his debt. Baudry-Lacantinerie et Barde, I, 643.”
 

 In discussing the right of action given to creditors by article 1166 of the Code Napoleon, the French authorities are further agreed that the claim of the creditor must be founded upon an exigible debt. Planiol, vol. 2, No. 278; Demolombe, t. 25, no. 100; Laurent, t. 16, no. 393; Planiol et Ripert, t. 7, no. 912; Marcade (1855) vol. 4, p. 399.
 

 The meaning of an exigible debt, as used in this connection, is that there must be a liquidated and demandable or matured claim. Now the claim of the plaintiff in the case at bar is not property founded upon an exigible debt, and, in fact, plaintiff is not seeking the payment of a debt at all, and therefore is not within the right granted by articles 1990, 3182, and 3183 of the Louisiana Civil Code, applied in the cases cited by counsel for plaintiff.
 

 Finally, counsel for the plaintiff contends that under the law of Louisiana there is no right which does not have an appropriate remedy to vindicate its breach, referring us to Allen v. Shreveport Mutual Bldg. Ass’n, 183 La. 521, 525, 164 So. 328; Citizens’ Bank v. Marr, 111 La. 601, 602, 35 So. 780; Morris v. Cain, 35 La.Ann. 759, 760; and Fortier v. Slidell, 7 Rob. 398.
 

 In Allen v. Shreveport Mutual Bldg. Ass’n, supra, the court pointed out the limitations and restrictions on this general rule, which is predicated on article 21 of the Civil Code. This article clearly states that the courts may resort to equity in the absence of express law, so that, when the law expressly points out a particular remedy for a particular right, the courts are powerless to grant any other under the guise or pretext of exercising its powers as an equity court. As we have already shown, the articles of the Civil Code provide the remedies that the lessee may exercise. One of the remedies is an action in damages against the lessor. C.C. art. 2696. The lessee must be content with a satisfaction of his right by means of money, and he is not only not entitled to the specific remedy of a real ac-
 
 *213
 
 lion, but that specific remedy is expressly denied him. To hold otherwise, and to grant him some other remedy on the pretense of doing equity, would be to wipe out of the Civil Code and the Code of Practice all the articles that so carefully prohibit the lessee from meddling with the lessor’s title, and relegate him to an action in damages, or, in a case in which he has been evicted from only a part of the property, to an abatement of the rent, if he so desires it. A lessee has only a personal right, and therefore a personal action is an “appropriate” remedy.
 

 An action in damages is a formidable remedy, for the mere danger of being mulcted in damages will ordinarily force any lessor, who has a good title, or thinks he has, to vindicate that title, and thereby maintain his lessee in peaceable possession. And this is particularly true of the lessor in a mineral lease, because, if he does not protect his lessee’s possession when he can, the damages recoverable by the lessee may be so great as completely to ruin the lessor. Therefore it may be expected that only in a case in which the lessor finds, after granting a lease, that he does not own the property, or, through error, has included in the leased property certain lands that he does not own, of which a third person has taken possession, will he decline to institute a petitory or possessory action upon the demand of the lessee.
 

 The courts must take the law as they find it. They cannot legislate on the pretense of doing equity; and, if a lessee in a mineral lease is to be given any greater rights than the lessee in an ordinary predial lease, it is the Legislature that must give them to him, and not the courts.
 

 Our conclusion is that the district judge also properly sustained the exception of no right or cause of action to the second suit.
 

 For the reasons assigned, the judgments appealed from are affirmed, at appellant’s costs.