SANDERS, Justice.
 

 Plaintiff brought this suit against Union Producing Company, A. J. Hodges Industries, Inc., and Douglas Whitaker to be recognized as the owner of certain mineral rights and a mineral lease applying to land in Claiborne Parish and to cancel defendants’ mineral leases on the same land.
 

 Defendants filed "exceptions” of no cause of action, no right of action, and nonjoinder of indispensable parties. The district court overruled these exceptions. Defendants then filed an answer, reserving all rights under the exceptions.
 

 After trial, the district court rendered judgment for plaintiff
 
 [1]
 
 cancelling the two mineral leases and recognizing plaintiff’s ownership of the mineral rights and lease he asserted. The court awarded plaintiff $1000.00 as attorney fees.
 

 On appeal, the Court of Appeal amended the judgment so as to cancel one of the leases only "with respect to the mineral interests of said plaintiffs,” and to eliminate the award of attorney fees and, as thus amended, affirmed the judgment. Judge Ayres dissented on the nonjoinder and no right of action objections and on the merits. See 176 So.2d 777. We granted certiorari on defendants’ application. 248 La. 440, 179 So.2d 276.
 

 Mrs. Avice H. Byrd, a landowner, granted to Union Producing Company and A. J. Hodges Industries, Inc. an oil, gas, and mineral lease,
 
 [2]
 
 having a primary term of six years from March 22, 1956. Leonard Byrd, the owner of an adjoining tract, granted to the same lessees a mineral lease,
 
 [3]
 
 
 *47
 
 having a primary term of six years from March 21, 1956.
 

 By Order No. 23-C, dated December 8, 1958, and effective January 1, 1959, the Commissioner of Conservation created a drilling and production unit, including the two leased tracts, for the “D” Sand of the Cotton Valley Formation.
 

 By Order No. 23-E, dated July 27, 1959, and effective August 1, 1959, the Commissioner of Conservation created a drilling and production unit, including the two leased tracts, for the Bodcaw and Vaughn Sands of the Cotton Valley Formation.
 
 [4]
 

 Under a farmout agreement with Union and Hodges, defendant Whitaker commenced the drilling of a well in the unit on December 15, 1961, within the primary term of both leases. The well was completed March 10, 1962, within the primary term of the leases, as a producer from the non-unitized “B” and McFearin sands. The producing McFearin Sand lay just below the unitized Vaughn Sand.
 

 Immediately after completion of the well, Whitaker applied to the Commissioner of Conservation to establish a drilling and production unit for the McFearin Sand. The Commissioner held a public hearing as to this application March 23, 1962.
 

 On April 2, 1962, Mrs. Avice H. Byrd conveyed to J. C. LeSage one-half the minerals in and under the property she had previously leased to Union and Hodges. The mineral sale was “subject to any valid and recorded oil and gas lease” but included one-half the royalties due and to become due under such lease.
 

 On April 4, 1962, Leonard Byrd granted a mineral lease with a five-year term to J. C. LeSage covering the same, property Byrd had previously leased to Union and Hodges. This lease stipulated it was without warranty, even for the return of the purchase price, and subject to any existing legal oil and gas lease affecting the land.
 
 [5]
 

 On April 26, 1962, effective May 1, 1962, the Commissioner formed a unit for the
 
 *49
 
 McFearin Sand, including both leased tracts.
 

 All shut-in and other royalty payments due to Mrs. Avice H. Byrd and Leonard Byrd from the producing well have been paid by Whitaker in accordance with their leases to Union and Hodges.
 

 Lessee LeSage has also paid to Leonard Byrd all shut-in royalties due under his oil and gas lease of April 4, 1962.
 

 The objections raised in the peremptory exception were among the factors that caused us to grant certiorari. These objections have been ably reurged.
 

 Exception of No Cause of Action
 

 The Court of Appeal pretermitted the exception of no cause of action. Defendants assert the petition alleges only legal conclusions and contains no allegations of fact as a basis for cancelling the leases.
 

 Harsh rules of pleading are not favored in this state. If it is possible to do so by a reasonable construction of the pleading, the court should maintain the sufficiency of a petition so the litigant may have his day in court, without unnecessary delay. Succession of Smith, 247 La. 921, 175 So.2d 269; Erath Sugar Company v. Broussard, 240 La. 949, 125 So.2d 776; Florida Molasses Co. v. Berger, 220 La. 31, 55 So.2d 771; West v. Ray, 210 La. 25, 26 So.2d 221.
 

 In oral argument, plaintiff has classified his action as petitory.
 

 Article 3651 of the Louisiana Code of Civil Procedure provides:
 

 “The petitory action is one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff’s ownership.”
 

 Liberally construed, the petition reflects plaintiff is not in possession of the alleged lease and mineral rights, defendants claim ownership adversely to plaintiff, and defendants’ rights, because of the expiration of the primary terms of their leases, have terminated. Plaintiff prays for recognition of his ownership of subsisting mineral rights and the “cancellation” of defendants’ leases.
 

 The prayer of the petition, of course, seeks relief beyond recognition as owner of the described mineral rights, the relief normally associated with a petitory action. It likewise seeks to cancel, or to decree no longer effective, defendants’ leases, containing reciprocal obligations.
 

 We conclude the petition, polarized around the petitory action, is sufficient to state a cause of action.
 

 
 *51
 

 Exception of No Right of Action
 

 The exception of no right of action is also directed to the petition. Defendants offered no evidence on the exception. They argue since plaintiff’s rights were expressly subordinated to their previously existing leases, he occupies the position of top lessee of one tract and top mineral rights purchaser of the other. Defendants urge a top lease creates only a personal right, not a real right, and a top mineral purchase is the sale of only a hope. In neither instance, defendants submit, does plaintiff have a right of action as to the present suit.
 

 The objection of no right of action raises the question of whether plaintiff has an interest in the subject matter of the litigation. LSA-C.C.P. Art. 927. As we have observed, plaintiff has brought an action seeking judicial recognition of his ownership of described mineral interests and the cancellation of the leases. In essence, plaintiff alleges his mineral rights ownership became effective when the contracts were signed, for the previous leases had already terminated. He bases this suit upon the assertion of a valid mineral lease on one tract and a valid mineral servitude
 
 on the
 
 other.
 

 A petitory action has always been available in a proper case to the owner of a mineral servitude. Allison v. Wideman, 210 La. 314, 26 So.2d 826; Gulf Refining Co. of Louisiana v. Glassell, 186 La. 190, 171 So. 846.
 

 Irrespective of what the law has. been in the past, mineral leases are now characterized as real rights, and they may be asserted, protected, and defended in the same manner as other immovable property. This includes the right of resorting to a petitory action.
 

 LSA-R.S. 9:1105 provides:
 

 “Qil, gas, and other mineral leases, and contracts applying to and affecting these leases or the right to reduce oil, gas, or-other minerals to possession, together with the rights, privileges, and obligations resulting therefrom, are classified as real rights and incorporeal immovable property. They may be asserted, protected, and defended in the same manner as may be the ownership or possession of other immovable property by the holder-of these rights, without the concurrence, joinder, or consent of the landowner, and', without impairment of rights of warranty, in any action or by any procedure-, available to the owner of immovable property or land. This Section shall be considered as substantive as well as procedural so that the owners of oil, gas and' other mineral leases and contracts within the purpose of this Section shall have the benefit of all laws relating to the-owners of real rights in immovable property or real estate.”
 

 
 *53
 
 •Article 3664 of the Louisiana Code of Civil Procedure also provides:
 

 “A
 
 mineral lessee or sublessee, owner of a mineral interest in immovable property, owner of a mineral royalty, or of any right under or obligation resulting from a contract to reduce oil, gas, and ■other minerals to possession, is the owner of a real right. These rights may be asserted, protected, and defended in the same manner as the ownership or pos-session of immovable property, and without the concurrence, joinder, or consent of the owner of the land.”
 

 Defendants contend Article 3664, Louisiana Code of Civil Procedure, is inapplicable to this case because defendants acquired their mineral leases prior to the effective date of the Code, January 1, 1961. Plaintiff, of course, obtained his mineral contracts and instituted suit after the effective date.
 

 Act 15 of 1960, enacting the Code of Civil Procedure, provides:
 

 “SECTION 4. (A) This act is hereby declared to be remedial legislation.
 

 “(B) The provisions of the Louisiana Code of Civil Procedure enacted by Section 1 hereof, so far as applicable, shall govern and regulate the procedure in all ■civil actions and proceedings:
 

 “(1) Instituted on or after the effective date of this act; * * * ”
 

 Clearly, Article 3664 of the Louisiana Code of Civil Procedure applies to the present preceding. See McKee v. Eskrigge, La.App., 139 So.2d 545.
 

 We conclude the exception of no right of action is without merit.
 

 Exception of Nonjoinder
 

 In the objection of nonjoinder, defendants assert Mrs. Avice H. Byrd and Leonard Byrd are indispensable parties to this suit. On the other hand, plaintiff argues LSA-R.S. 9:1105 and LSA-C.C.P. Article 3664 make their joinder unnecessary, because these provisions allow plaintiff to bring the suit “without the concurrence, joinder, or consent of the owner of the land.”
 

 Article 641 of the Louisiana Code of Civil Procedure provides:
 

 “Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.
 

 “No adjudication of an action can be made unless all indispensable parties are joined therein.”
 

 Article 642 of the Louisiana Code of Civil Procedure provides :
 

 “Necessary parties to an action are those whose interests in the subject
 
 *55
 
 matter are separable and would not be directly affected by the judgment if they were not before the court, but whose joinder would be necessary for a complete adjudication of the controversy.
 

 “An adjudication of an action may be made even if all necessary parties are not joined therein, but when timely objection is made to the nonjoinder of a necessary party the court shall require his joinder if he is subject to its jurisdiction.”
 

 Clearly, the interests of defendants’ lessors would be “directly affected by the judgment” sought in this action and rendered by the Court of Appeal. In decreeing defendants’ leases to be of no effect and recognizing the plaintiff as owner of subsisting mineral rights, the court necessarily alters the interests of defendants’ lessors.
 

 Before suit, Avice H. Byrd had a full lease on her land and contractual relations with defendants, who bore a duty to fulfill the lease obligations. If plaintiff has judgment, this lease will be decreed of no effect, at least as to a one-half mineral interest, despite the express subordination in plaintiff’s contract.
 

 Before suit, Leonard Byrd had a fully operative lease on his land and contractual relations with defendants, who owed him a duty to fulfill the lease obligations. If plaintiff has judgment, this lease will be decreed of no effect and the lessor’s rights will be extinguished, despite the express subordination. The lessor will receive a different lease obligor under another lease the court will have decreed operative. That the substitute-lease coincidentally provides for identical royalties to the lessor does not prevent his interests from being affected.
 

 Plaintiff strongly urges that LSA-R.S. 9:1105 and LSA-C.C.P. Article 3664 expressly authorize this suit “without the concurrence, joinder, or consent of the owner of the land.” It is true, of course, that a mineral lessee may under these provisions bring suit in his own name to assert his rights in the same manner as the ownership or possession of immovable property. The former rule restricting the real actions to land or servitude owners, as announced in Gulf Refining Company of Louisiana v. Glassell, 186 La. 190, 171 So. 846 (1936), has been abrogated. In the present case, however, Mrs. Avice H. Byrd and Leonard Byrd occupy a status other than landowners. They are common lessors and authors in title of plaintiff and defendants in successive instruments that expressly subordinated plaintiff’s contracts to those of defendants. Their interests are deeply intertwined with the subject matter of the s,uit and are so affected by a judgment that a complete and equitable adjudication cannot be made unless they are joined. Hence, in our opinion, they are indispensable parties. LSA-C.C.P. Art. 641; Martin Tim
 
 *57
 
 ber Co. v. Roy, 244 La. 1050, 156 So.2d 435; Humble Oil & Refining Co. v. Jones, 241 La. 661, 130 So.2d 408; Horn v. Skelly Oil Co., 221 La. 626, 60 So.2d 65. If, however, we have magnified the interests of these parties, the result will be the same. They are at least necessary parties and must be joined, since defendants timely objected to their nonjoinder. LSA-C.C.P. Art. 642.
 

 Because of our conclusion as to this exception, we do not reach the merits of the case.
 

 For the reasons assigned, the judgments of the Court of Appeal and district court are reversed and set aside, and the case is remanded to the district court to join Mrs. Avice H. Byrd and Leonard Byrd as parties to this action, and for further proceedings according to law and the views herein expressed. Costs incurred in the appeal and in this Court shall be paid by the plaintiff. All other costs are to await the final disposition of the case.
 

 HAMITER, J., concurs in the result.
 

 [1]
 

 . The original plaintiff, J. C. LeSage, died during the pendency of the suit, and his heirs were substituted as parties.
 

 [2]
 

 . This lease, dated February 2, 1957, was recorded in Conveyance Book 225, page 106, records of Claiborne Parish, and affected the following described property: Northeast Quarter of Northeast Quarter (NE/4 of NE/4) of Section 18, Township 19 North, Range 5 West, Claiborne Parish, Louisiana.
 

 [3]
 

 .This lease, dated March 21, 1956, was recorded in Conveyance Book 225, page 103, records of Claiborne Parish, and affected the following described property: Northwest Quarter of Northeast Quarter (NW/4 of NE/4) of Section 18, Township 19 North, Range 5 West, LESS AND EXCEPT 4 acres in the Northwest corner thereof.
 

 [4]
 

 . In oral argument, counsel for plaintiff has suggested that this order created no unit. However, for the statement of facts, we accept Paragraph 8 of the Stipulation filed in the district court.
 

 [5]
 

 . At this point, the status of the mineral rights may be illustrated as follows:
 

 TRACT 1: Avice H. Byrd, owner TRACT 2: Leonard Byrd, owner
 

 Defendants’ Mineral lease, March 22, 1956; interests 6-year primary term ending March 22, 1962, absent extension. Mineral lease, March 21, 1956; 6-year primary term ending March 21, 1962, absent extension.
 

 Plaintiff’s Undivided one-half minerals April interests 2, 1962, subject to any valid and recorded lease. Mineral lease, April 4, 1962, with no warranty, and subject to existing leases.