JOAN BERNARD ARMSTRONG, Chief Judge.
|]The plaintiff-appellant, Forterra Capital, L.L.C. (“Forterra”), appeals the March 11, 2010 summary judgment dismissal of it’s claims against the defendants-appel-lees, Innovative Marine Services, L.L.C. (“IMS”), Michael Thibodaux, Jr. (“Mr. Thi-bodaux, Jr.”), Jason Lyons (“Mr. Lyons”), Jay Capouch (“Mr. Capouch”) and Allison Randolph (“Mr. Randolph”). The same judgment denied Forterra’s own motion for summary judgment, but Forterra does not raise that as an issue in this appeal. For the reasons that follow, we affirm the judgment of the trial court.
On or about January 12, 2007, Information Technology Systems, L.L.C. (“ITS”), with Mr. Michael J. Thibodaux, Sr. (Mr. Thibodaux, Sr.) as guarantor, executed a promissory note and allonge thereto (collectively, the “Loan Documents”) in the amount of $966,195.00 in favor of Forterra in connection with a certain Commercial Loan Agreement and Commercial Security Agreement.
ITS and Mr. Thibodaux, Sr. failed to make the required payments to Forterra. Consequently, Forterra entered into a Settlement Agreement with ITS and Mr. Thi-bodaux, Sr. on June 22, 2007, which provided that ITS and Mr. Thibodaux, Sr. would continue to make payments to For-terra pursuant to the original loan documents, and that Forterra would be granted an interest in certain |2contracts to be obtained by ITS, Mr. Thibodaux, Sr. and their affiliates, which included defendant Mamal, Inc. (“Mamal”). However, ITS, Mr. Thibodaux, Sr. and their affiliates failed to fulfill the terms of the Settlement Agreement.
On August 23, 2007, Forterra filed a breach of contract suit against ITS and Thibodaux, Sr. in the Civil District Court for the Parish of Orleans, seeking damages for breach of the Settlement Agreement. On November 15, 2007, Forterra and Mr. Thibodaux, Sr., in his individual capacity and as President/Manager of ITS, executed a Consent Judgment to end that litigation.
The Consent Judgment provided that ITS and Mr. Thibodaux, Sr. would continue to make payments as required under the loan documents; that the total indebtedness to Forterra as of November 2007 was $1,141,341.32; and that ITS and certain of its affiliates, including specifically Mamal, which is wholly owned by Mr. Thibodaux, Sr., would also make payments to Forterra on an ongoing basis based upon work obtained by Mamal and other affiliates. According to Forterra, pursuant to the Loan Documents, Settlement Agreement and Consent Judgment, Mamal, along with ITS and Mr. Thibodaux, Sr. became indebted to and obligors to Forter-ra. Again, ITS, Mr. Thibodaux, Sr. and Mamal failed to make the payments as required.
On July 29, 2008, Forterra filed a “Petition to Annul Transfers and for Damages,” naming as defendants Innovative Marine *965 Services, L.L.C. (“IMS”), Mamal, Inc., Michael J. Thibodaux, Sr., Michael Thibo-daux, Jr., Jay Capouch, Jason Lyons and Allison Randolph, alleging that:
1. Mamal and IMS share the same address as Information Technology Systems, L.L.C. (“ITS”). However, we note that ITS is not named as a defendant.
|¾2. Mr. Thibodaux, Sr. is the President/Manager of ITS and the sole shareholder and director of Mamal. 8. Mr. Thibodaux, Jr. is the son of Mr. Thibodaux, Sr. and is a member, manager, and/or control person of IMS.
4. Capouch served as a consultant for ITS, Mr. Thibodaux, Sr. and Mamal and is a member and manager of IMS.
5. Mr. Randolph was an employee of ITS and a member, manager, and/or control person of IMS.
Forterra contends that Mr. Thibo-daux, Sr. and ITS transferred valuable assets known as Mudd X machines (used to clean tanks on offshore supply vessels) from their wholly owned affiliate, Mamal, at a time when Mamal was insolvent to another entity controlled by them, IMS, in order to frustrate Forterra’s attempts to collect the debt owed to it. Forterra relies primarily on La. C.C. art. 2036, the revoca-tory action, and La. C.C. art. 3182 and 3183. La. C.C. art. 3182 provides that:
Whoever has bound himself personally, is obliged to fulfill his engagements out of all his property, movable and immovable, present and future.
La. C.C. art. 3183 provides that:
The property of the debtor is the common pledge of his creditors, and the proceeds of its sale must be distributed among them ratably, unless there exist among the creditors some lawful causes of preference.
However, this is almost entirely a fact based case. Forterra cites the following cases in support of the merits of its claim: Gulf Refining Co. of Louisiana v. Glassell, 186 La. 190, 171 So. 846 (1936), and In re Goldberg, 277 B.R. 251, 283 (Bkrtcy. M.D.La.5/1/02). Glassell stands for the proposition that La. C.C. harts. 3182 and 3183 do not afford a creditor “specific relief such as the maintenance of a petitory action by a lessee against a third person in possession of the property.” As was explained in Glassell:
It logically follows that articles 3182 and 3183 of the Louisiana Civil Code, being literal translations of articles 2092 and 2093 of the Code Napoleon, as the above-quoted law writers pointed out, are designed to secure to creditors the payment of their ‘money debts.’ It is only money creditors, even under the liberal provisions of the French article 1166, who have a common pledge on the property of the debtors, who can exercise the rights, and actions of the debtors.
Articles 1990, 3182, and 3183, R.C.C., therefore, do not authorize the granting of specific relief such as the maintenance of a petitory action by a lessee against a third person in possession of the property-
Id., 186 La. at 209-210, 171 So. at 852-853.
Moreover, the facts in Glassell bear no direct relation to those of the instant case. Therefore, Glassell provides no guidance to this Court.
In re Goldberg, supra, is more relevant. It stands for the proposition that the revo-catory action under La. C.C. art. 2036 allows a creditor to set aside a transaction of the debtor when it increases the insolvency of the debtor on a dollar for dollar basis without the necessity of having to *966 show receipt of less than reasonably equivalent value by the debtor as a threshold condition. La. C.C. art. 2036 provides that:
An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor’s insolvency.
We agree with the interpretation of La. C.C. art. 2036 as set forth in Parish Nat. Bank v. Wilks, 04-1439 (La.App. 1 Cir. 8/3/05), 923 So.2d 8:
15In accordance with the clear language of La. C.C. art. 2036, in order for an obligee to annul an act of the obligor, he must show (1) an act (or failure to act) of the obligor that causes or increases the obligor’s insolvency; and (2) the act must occur after the obligee’s rights arose. See Lewis v. Hood, 97-2118 (La.App. 1st Cir.11/6/98), 721 So.2d 1078, 1080.
Id., 04-1439, p. 10, 923 So.2d at 15.
More specifically, Forterra complains that Mr. Thibodaux, Sr., on behalf of Mamal, transferred certain Mudd X machines (used to clean tanks on offshore supply vessels) and all present and future rights thereto to IMS for three hundred thousand dollars ($300,000.00). Forterra contends that this increased Mamal’s insolvency. In Forterra’s Memorandum in Support of its Motion for Summary Judgment and in its original brief to this Court, Forterra notes that:
As of November 5, 2007, the date of the transfer, the liabilities of Mamal were $3,917,836.31 while its assets were merely $3,241,386.34.
This results in an insolvency of $676,449.97. The record also contains an affidavit of Wilbur J. “Bill” Babin, Jr., as the Chapter 7 Bankruptcy trustee of Michael J. Thibodaux, Sr. and Andrea Thibo-daux. Mr. Babin avers without contradiction that:
According to the bankruptcy schedules of the Debtors, the Debtors were the 100% owners of Mamal, Inc. as of the date the Debtors filed Bankruptcy.
Mr. Babin’s affidavit goes on to explain that his “office ran a Balance Sheet of Mamal, Inc. as of November 4, 2007....” The balance sheet shows, without contradiction, on that date Mamal had liabilities of $3,930,866.11 and total liabilities and equity, i.e., assets of $3,190,776.44, resulting in an insolvency of $740,089.67, or an insolvency of approximately $65,000.00 greater than the insolvency on the next day, November 5, 2007, which is the date of the transfer by | fiMamal that is the crux of this litigation. Thus, it cannot be said that the transfer resulted in a La. C.C. art. 2036 increase in Mamal’s insolvency, the second of the alternative requirements of a revocatory action. Moreover, we find For-terra’s revocatory action does not satisfy the first alternative requirement of La. C.C. art. 2036, that the transaction complained of caused Mamal’s insolvency as it is uncontested that Mamal’s insolvency antedated the transfer of the Mudd X ma-chinéis). In other words, because Forter-ra relies on the November 5, 2007 Mamal balance sheet in support of its claim, and does not contest the accuracy of the November 4, 2007 balance sheet, we find that no genuine issue of material fact exists based on Forterra’s revocatory claims to reverse the judgment of the trial court.
We also find merit in the trial court’s observation that while Mamal was mentioned in some of the documents that form the basis of Forterra’s claim, Mamal was neither a signatory nor a party, to those documents. The Commercial Loan Agreement, the seminal document creating the debt upon which Forterra’s claim is based, *967 was executed by Forterra and ITS. Mr. Thibodaux, Sr. signed as President/Manager of ITS. Mamal was not a party.
The Settlement Agreement was between ITS (represented by Mr. Thibodaux, Sr.), Mr. Thibodaux, Sr., in his personal capacity, and Forterra. In this Settlement Agreement, ITS and Mr. Thibodaux, Sr. agree to bind any of their affiliates, but those affiliates are not named and no one besides ITS, Mr. Thibodaux, Sr. and For-terra were signatory to the document.
On November 15, 2007, Forterra and Thibodaux, Sr. individually and on behalf of ITS, signed a “Stipulated Consent Judgment.” This Consent Judgment stated that it was intended to bind ITS and any of its affiliates, “including but not | Jimited to Michael J. Thibodaux, Sr., Thibodaux Equipment, Inc., Mamal, Inc. and Sky Data, Inc.... ” However, the record reflects that of those “affiliates” of ITS just listed, the only one that was a party to the Consent Judgment was Mr. Thibodaux, Sr. More particularly, Mamal was not a signatory to the judgment, although following Forterra’s arguments concerning Mr. Thi-bodaux Sr.’s control over Mamal, Mr. Thi-bodaux could just as easily have signed on behalf of Mamal as he did for ITS, had it been his intention to do so. Therefore, the lack of an appearance by Mamal undermines Forterra’s argument.
The language of the Consent Judgment gave Forterra a security interest in the rights of the ITS “affiliates,” including Mamal, to “certain contracts for transportation by barge work....” But the appel-lees point out without contradiction that Mamal engaged in no barge work and, therefore, even if we were to assume for purposes of argument that the Consent Judgment to which Mamal was not a signatory bound it nonetheless, the only thing for which the Consent Judgment purported to bind Mamal was in connection with barge work, and it performed none.
Forterra contends that Mr. Thibodaux, Sr., the president and sole owner of Mamal, in response to a request for admission, effectively admitted that Mamal was an obligor of Forterra by failing to respond to Forterra’s request for admission directed to this issue. La. C.C.P. art. 1467. The appellees complain that they cannot be bound by admissions to which they were not a party. Regardless, the only obligation imposed by the Consent Judgment on Mamal, assuming that Mamal could be bound by a Consent Judgment to which it was not a signatory, was in connection with barge work performed by Mamal, but Mamal admittedly | sperformed no such barge work. Therefore, any obligation arguably owed by Mamal to Forterra was meaningless.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
TOBIAS, J., Dissents and Assigns Reasons.