HAWTHORNE, Justice.
In this court appellants, Mary Jane Berman, Robert J. Chauvin, Henry P. Mirandona, P. & J. Realty Company, and James F. Turnbull, are seeking a reversal of a judgment of the lower court which rejected their demand to be recognized as owners in indivisión of a Jis of % of the oil, gas, and other minerals produced under a mineral lease granted by D. V. Doussan Oil & Planting Company of Lafourche, Inc., to defendant-appellee Joe W. Brown on June 26, 1944, and which rejected also their demand for an accounting of all the oil, gas, and other minerals produced under the lease from the leased property.
This lease of June 26, 1944, will hereafter be referred to as the “second lease”. Approximately eight years before the execution of the second lease, the fee owner, D. V. Doussan Oil & Planting Company, executed an oil, gas, and mineral lease covering the same property to Allan B. Crowder, and by mesne conveyances appellants Mirandona and Chauvin became the owners of this lease, which will be designated hereafter as the “first lease”. These appellants subleased the entire tract, reserving to themselves a Vie part of % of all the oil, gas, and other minerals that might be produced under the lease. This sublease provided:
“The one-sixteenth (Vis) part of the eight-eighths (¥s) of all the oil, gas and other minerals excepted and reserved by assignors herein shall apply and be a part of all future renewals, extensions and nevo leases made by assignee on the lands covered by the herein described lease or leases for a period of one year from the date of the expiration of said lease or leases.” (All italics ours.)
This is the clause on which appellants rely in this appeal for recognition of a royalty interest in the second lease. The legality of this clause is conceded by the appellee and is not an issue on this appeal.
The sublease from Mirandona and Chauvin further provided that all conditions between the parties thereto should extend to their heirs, executors, administrators, successors, and' assigns. Subsequently Mohawk Corporation acquired the lease subject to these provisions and in turn conveyed it to defendant-appellee Joe W. Brown. In the transfer from Mohawk to Brown, Mohawk reserved a ¥& overriding royalty, and this act of transfer provided that it was made subject to the royalty interest of appellants Henry P. Mirandona and Robert J. Chauvin. Thus Brown acquired the first lease with a working interest of only Wi.6 of % of all the oil and gas that might be produced under it, because Ys (or ¥is) had been reserved by the fee owner, Vie by Mirandona and Chauvin, and y& (or %o) by Mohawk; that is, he acquired this lease subject to 5As outstanding royalty interests. On the same day he acquired this lease, Brown assigned it to Mabro Oil *624 Company, Inc., a corporation which had been formed by him, his brother, and two associates for the purpose of developing the lease.
About three years later, the fee owner, D. V. Doussan Oil & Planting Company of Lafourche, Inc., instituted suit against Mirandona, Chauvin, Mohawk, Brown, and Mabro -to cancel the oil and gas lease for nondevelopment and failure to pay delay rentals, and judgment was rendered 'as prayed for in favor of the -fee owner on May 12, 1944. Less than two-months after the rendition of this judgment, Joe W. Brown acquired the second lease on the same property from Doussan. Production was obtained by Brown from the property under this second lease, and plaintiffs-appellants instituted this suit.
Both Mohawk and Mabro drilled wells on the property when they had the first lease, and some oil was produced from the leased premises as a result of their drilling operations, but the return from the wells was so small that the fee owner became dissatisfied and instituted suit for cancellation of the lease, as hereinabove set out. The defendants in that suit appeared and filed answers of general denial. During the pendency of the suit, D. V. Doussan Oil & Planting Company, plaintiff, and defendants Mirandona and Chauvin entered into a compromise agreement in which Mirandona and Chauvin agreed that a judgment be entered by the court cancelling the primary lease and the various assignments thereof, and plaintiff, the fee owner, agreed to waive and abandon all claims which it had against Mirandona and Chauvin, whether for back rents, current rents, or future-rents, or for damages or attorney’s fees. Joe W. Brown and the other defendants, were not parties to this agreement. Their attorney addressed a letter to the district judge informing him that they had made no-appearance on the date the case was fixed for trial because they had.no defense'to-urge and had no objection to the rendition of judgment.
The court rendered a judgment of cancellation which provided that the cancellation of the lease should be “ * * * without prejudice to said defendants’ rights in -and to what is known as the Doussan No. 3 Well and the twenty-five (25) acres which surround it”, and this provision was made pursuant to the terms of the lease itself that, “In case of cancellation or termination of the lease for any cause, Lessee shall have the right to retain under the terms hereof twenty-five acres of land around each well producing * * * ”,
During the time the landowner’s suit for cancellation of the first lease was pending, a meeting of the board of directors of the Mohawk Corporation was held in the office of Miss Emily Ashmore, a notary public, in the City of New Orleans. The appellee Joe W. Brown as a director of the corporation was at this meeting, and, according to Miss Ashmore, “one of the Mirandonas” was also present, but she could not identify the one *626 present as the appellant, and the record does not disclose whether this was the appellant Henry P. Mirandona or his brother Albert. At this meeting Brown stated that he was interested in acquiring a new lease on the property and offered to convey a interest in a new lease, if acquired, to Mohawk Corporation and also to Mirandona for consideration of $3,000. This proposition was accepted by Mohawk.
The object and purpose of the stipulation that the reservation by Mirandona and Chauvin under the first lease of Via part of the % of all the oil, gas, and other minerals “shall apply and be a part of all future renewals, extensions and new leases made by assignee on the lands covered by the herein described lease or leases for a period •of one year from the date of the expiration of said lease or leases” was to prevent the surrender of the lease by the sublessee and its subsequent reacquisition by the sublessee ■or his assigns free of appellants’ interest, or to protect the sublessors from what is commonly known in the oil fraternity as a “washout”, or to insure what we may ■simply term “fair play”.
The evidenqe in this record convinces us that Brown was most anxious to circumvent this stipulation and to be able to develop this property without the encumbrance of the overriding royalties. Albert Bendernagel, the president of D. V. Doussan Company, testified in the suit for cancellation that from 1941 until the suit was filed in December, 1943, he called on Brown on numerous occasions to discuss the matter of further development of the property-or-the payment of rentals; that Brown indicated that he would like to drill one or two more wells but that it did not suit him to do so at that time; that, as time passed, Brown finally admitted to him that he had lost interest in further drilling because of the overriding royalty then existing in Mirandona and Chauvin of Via and in the Mohawk Corporation of V&, and that the risk was too great to put up the money required to drill and carry the overriding interests. Brown himself testified in the present suit that he would not have taken the lease with only an Wie working interest except to do his brother and their associates a ' favor. He testified: “ * * * I told you except for doing my brother and our associates a favor I wouldn’t have gone into that thing with tyis working interest.”
The record clearly shows that; while the suit for cancellation of the first lease was pending, Brown was contemplating taking a new lease on the identical property covered by the first lease, and less than two months after the judgment of cancellation of the first lease he did acquire from the landowner the second lease on the premises. There can be no doubt that the failure to develop the property under the first lease or pay the delay rentals was caused by his dissatisfaction with the outstanding royalties of a % in Mohawk and a in Mirandona and Chauvin. It is evident that the object in failing to pay the delay rentals and in- fail *628 ing to develop the leased property was to make the existing lease subject to cancellation and to wipe out the overriding royalties, so that a new lease' could be obtained free from them. In fact, the old lease could have beén kept alive by the same expenditure he made for the new lease, for, according to Brown’s own testimony, he acquired the new lease for the same amount that was due for the rentals for the delay in drilling under the old lease. He stated: “ * * * I could get the lease. All the Doussans wanted was their back delay rental, which amounted to $12,000.00, and that turned out to be the fact, because that was the consideration of the lease I subsequently got was $12,000.00 premium payment and $6000.00 delay rental.”
Brown apparently accomplished his object insofar as Mohawk’s Ys royalty was concerned by allowing the first lease to expire and taking the second lease, but he overlooked the provision that the Jis royalty reserved.by Mirandona and Chauvin was to apply to, and be a part of, any new lease, which was designed to prevent such a scheme or plan as this. Let us now consider whether the judgment in the landowner’s suit for cancellation of the first lease for nondevelopment and failure to pay delay rentals had the effect of nullifying the provision so that Brown could take the second lease free of it.
■ That judgment, insofar as it may be pertinent, reads as follows:
“It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, The D. V. Doussan Oil and Planting Company of Lafourche, Inc., and against the defendants, Mabro Oil Company, Joe W. Brown, Mohawk Corporation, Henry P. Mirandona, and Robert J. Chauvin, ordering and decreeing the cancellation, annulment and forfeiture of that certain oil, gas and mineral lease which the said D. V. Doussan Oil and Planting Company of Lafourche, Inc., granted and executed in favor of Allen B. Crowder on May 19, 1936, the same being registered in C.O.B. 77 folio 175, as Entry No. 31866, of the Parish of Lafourche, and which by the terms of the lease covers, as the leased property two thousand (2000) acres of'land owned by petitioner and situated in the Parish of Lafourche and more particularly described as follows:
******
“It is further ordered, adjudged and decreed that there be judgment in favor of the D. V. Doussan Oil and Planting Company of Lafourche, Inc., and against the defendants, Mabro Oil Company, Joe W. Brown, Mohawk Corporation, Henry P. Mirandona, and Robert J. Chauvin, ordering and decreeing the cancellation, forfeiture and annulment of all subsequent transfers and assignments of said lease insofar as said transfers and assignments by the said defendants and/or their assigns, may bear upon petitioner’s heretofore described property, said subsequent or intermediate cancellations to begin with the as *630 signment and transfer by Allen B. Crowder to Henry P. Mirandona and Robert J. Chauvin, embrace and include all subsequent or intermediate transfers by the said Mirandona and Chauvin and/or their assigns, and end with the assignment by Joe W. Brown to Mabro Oil Company, as said transfers and assignments may appear of record in the Conveyance Office of the Parish of Lar fourche.
“It is further ordered, adjudged and decreed that the Clerk of Court and Ex-officio Register of Conveyances for the Parish of Lafourche be and he is hereby ordered and directed to cancel and erase •from the records of his office, not only the inscription * * * of the basic oil, gas and mineral lease which the said D. V. Doussan Oil and Planting Company of Lafourche, Inc., granted to Allen B. Crowder on May 19, 1944 [1936], but also all other inscriptions of transfers and assignments of said lease insofar as said transfers and assignments may bear upon petitioner’s above described property; that, in particular, said Clerk of Court and Ex-officio Register of Conveyances for the Parish of Lafourche be and he is hereby authorized, empowered and directed to cancel and erase from the records of his office the following inscriptions insofar and only to the extent that said inscriptions may bear against, affect or encumber the title to plaintiff’s heretofore described property: * *
Appellee argues that this judgment can-celled and terminated the stipulation in the sublease made by appellants Mirandona and Chauvin for a Jis royalty in any future lease.
The judgment cancelled and terminated the assignment or sublease made by Mirandona and Chauvin insofar as it may have borne upon the property of the plaintiff, D. V. Doussan Oil & Planting Company, and instructed the clerk of court to cancel the sublease or assignment “ * * * insofar and only to the extent that said inscriptions may bear against, affect or encumber the title to plaintiff’s heretofore described property * * * However, in considering the judgment’s effect on the stipulation, we must bear in mind that plaintiff in that suit, the fee owner, was seeking a cancellation of its obligation, the first oil and gas lease, for nondevelopment and failure to pay rentals, and that this was the only issue before the court in' that suit. A judgment rendered therein in favor of Doussan could not and did not affect an independent obligation existing exclusively between defendants in that suit — an obligation by which Brown bound himself that the reservation in the first lease was to apply to, and be a part of, any second lease taken by him on the same property; an obligation which arose between the sublessors and the sublessees subsequently to the execution of the first lease by the landowner; an obligation in which the landowner was not concerned and was without interest, and which never could operate as an obligation against it. Thus the judgment of cancellation could not and *632 did not have the effect of nullifying the stipulation so that Brown could acquire the second lease free from Mirandona and Chauvin’s overriding royalty.
To the royalty claim asserted by appellants, appellee also pleads res judicata, basing this plea on the judgment rendered in the landowner’s suit to. cancel the lease. Under Article 2286 of the Civil Code, the essential elements of the plea of res judicata are: The thing demanded must be the same; the demand must be founded on the same cause of action and must be between the same parties and formed by them against each other in the same quality. None of these requisites is present in the instant case, and there is no merit in this plea.
In connection with this plea of res judicata appellee argues also that Brown is a privy in title with Doussan and stands in its shoes in regard to this judgment. Since we have concluded that the judgment obtained by Doussan did not nullify the royalty provision, standing in Doussan’s shoes or being a privy of Doussan does not aid Brown in this action.
Defendant-appellee further contends that these appellants are now estopped to assert any rights that they may have by virtue of (1) the judgment rendered in the landowner’s suit for cancellation of the lease for nondevelopment and failure to pay rentals, (2) acts of silence in connection with the meeting of the board of directors of Mohawk Corporation held in Miss Emily Ash-more’s office, and (3) certain releases executed by appellants Mirandona, Chauvin, and Turnbull to the landowner after the judgment of cancellation.
It has been stated by this court that “The-cases holding that estoppels are not favored, by our courts are legion in our jurisprudence. Whenever estoppel is pleaded as an> element of a cause of action, it .must be pleaded specifically, the burden of proving the facts upon which the estoppel is founded, as well as the affirmative showing that he was misled by the acts and forced to act to his prejudice, resting upon the party invoking the doctrine. * * * ” Harvey v. Richard, 200 La. 97, 7 So.2d 674, 677, and. authorities therein cited.
In the recent case of Janney v. Calmes, 212 La. 756, 33 So.2d 510, 513, it was said: “Regarding the equitable estoppel pleaded, the jurisprudence of this court is that an: estoppel is not favored and that it will not be maintained unless the person urging it has been misled, to his prejudice, by acts of omission or commission- of him who is-sought to be estopped. * * * ” See also authorities therein cited.
Appellee argues that the appellants are estopped by the judgment in the landowner’s, suit cancelling the assignment or sublease in which these appellants reserved their overriding royalty because they allowed it to be rendered without taking any appeal therefrom, because any defense they might have had should have been urged at that time, and because Brown thereafter secured. *634 the second mineral lease based upon his search of the public records, where this judgment was recorded.
As we have heretofore pointed out, this judgment did cancel the assignment so that it could no longer operate as an obligation against the property of the plaintiff landowner in that suit, but it could not and did not affect the independent obligation existing exclusively between the defendants in that suit. That obligation could never have been urged against Doussan and was not an issue in that cause. There was no dispute whatever among the defendants in that suit, and there was no duty upon the part of these appellants, Mirandona and Chauvin, to urge the royalty provision against Doussan because it was no defense to its demand for cancellation of the lease for nondevelopment and failure to pay rentals. Since Brown acquired the first lease subject to this provision, which was a matter of record, and this obligation of the sublease according to its terms was to extend to the successors and assigns thereof, it cannot be said that he was a third person in regard to it and even entitled to rely on the public records when he took the second lease. Under these circumstances we fail to see how the doctrine of estoppel is applicable.
At the meeting of the stockholders of Mohawk held in the office of Miss Ash-more, Brown at that timé, as we have heretofore pointed out, offered to sell for a consideration of $3,000 a royalty interest in a new lease that might be secured. Appellee argues that under these circumstances it was the duty of Mirandona, who allegedly was present, to speak up if he pretended to claim an interest in any such lease which Brown might obtain, and that, by permitting the judgment in the fee owner’s suit to be rendered and by permitting Brown to spend large sums of money in developing the property under the second lease, Mirandona by his silence is now estopped to assert any right he may have.
Under the jurisprudence, the burden of proving the facts upon which the estoppel is founded rests upon Brown, and the record here does not disclose whether the Mirandona who was present at the meeting was, actually, Henry P. Mirandona, the appellant. However, if we take the position most favorable to appellee and assume that it was Henry P. Mirandona, there would be no estoppel against Chauvin. Brown has not shown, moreover, how there was any duty upon Mirandona to speak or that he, Brown, was misled and acted to his prejudice because of Mirandona’s silence. In fact, Brown testified that he was not acquainted with the Mirandonas or Chauvin, and that “ * * * if he [Mirandona] walked in the door right now I doubt if I would recognize him”. His detached attitude as to Mirandona is revealed by the following testimony elicited from him in regard to the meeting in Miss Ashmore’s office :
*636 • “Q. Mr. Brown, did you ask Mr. Mirandona at the only meeting you had for a release of any interest he might have- in any future lease on the Doussan property? A. No, I didn’t.
“Q. You did not? A. No.”
There is no evidence in this record to indicate that Brown took the second lease in reliance upon acts of omission o.r commission of Mirandona and Chauvin. From the presentation of this case it appears that he erroneously concluded that they had been “washed out” by the judgment of cancellation, but it is not shown that any acts •of theirs caused him to make such error, or that it was their duty to correct his error.
The elements of equitable estoppel are Lotally ■ lacking here. According to 3 Pomeroy’s Equity Jurisprudence (Symon’s 5th Ed.), sec. 805, at p. 191, these elements are: (1) There must be conduct — acts, language, or silence — amounting to a representation or a concealment of material facts; (2) these facts must be known to the party ■estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; (3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him; (4) the conduct must be done with the intention, or at least the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be.so acted upon; (5) the conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it to his prejudice.
This court in the case of Parker v. Ohio Oil Co., 191 La. 896, 186 So. 604, 608, recognized these principles as the basis of estoppel by silence, saying:
“ * * * ‘Mere silence will not work an estoppel. There must be some other element connected with the transaction and the silence to prevent a person from asserting his rights or claim. * * * But to' effect an estoppel by silence it must also appear that the person had a full knowledge of the facts and of his rights, that he had an intent to mislead, or at least a willingness that others should be deceived, and that the other party was misled by his attitude.’ * * * ”
There is nothing to show that Brown, as an assignee or sublessee of the first lease, which he had taken subject to the royalty stipulations in the sublease of Mirandona and Chauvin which were of record, was not just as familiar with all the facts as was Mirandona, or that Mirandona’s silence amounted to a misrepresentation or concealment of any material fact upon which Brown relied and acted to his prejudice.
We shall now consider the third ground of estoppel, based on the releases to Doussan. " After the judgment of cancellation two. instruments were executed in favor of *638 the landowner, one signed by Mirandona. and Chauvin and.the other by appellant James F. Turnbull. In the first instrument Mirandona and Chauvin granted to the landowner, D. V. Doussan Oil & Planting Company, a full acquittance, discharge, release, and quitclaim of the rights reserved to them in the judgment which cancelled the first lease, and particularly of any rights they might have had in Doussan No. 3 well and the 25 acres surrounding it. In the other instrument James F. Turnbull quit-claimed to the landowner any rights that he might have had in the first lease.
We fail to see how the releases executed by Mirandona, Chauvin, and Turnbull can operate as an estoppel in the instant case. These releases were nothing more than a quitclaim to, and in favor of, the landowner. Brown was not even a party to these documents, and these appellants certainly did not relinquish any of their rights as to him. Brown could not have relied on these documents in taking the second leáse, as it was taken long before their execution;
Brown argues further that, since the sublease by Mirandona and Chauvin contained a provision for reassignment if a future assignee did not want to pay rentals, this was the only obligation of the successors during the primary term, and that the provision urged by the appellants would take effect only in the event the lease expired at the end of the primary term. He argues that the words “expiration of said lease” mean “expiration of the primary term of said lease”. If that is what the parties meant, they could easily have said it, and should have, because it is well known to all dealing with a lease that it can expire in other ways than by expiration of its term. There is no merit in this argument.
Brown argues also that the first lease had not expired because a reservation was. made in the judgment as to the 25 acres, around the No. 3 well. This reservation was made in accordance with a provision of the lease itself that in case of cancellation or termination for any cause the lessee could retain 25 acres around each producing oil well. The language of this provision clearly contemplates that it would become effective only upon expiration of the lease.
Appellee’s next argument is that the royalty provision of Mirandona and Chauvin did not apply to him because he was. not a successor or assign within the meaning of the clause “all conditions between the parties hereunto shall extend to their heirs, executors, administrators, successors and assigns”. Within the contemplation of that provision he was a “successor or assign” because the rights under the lease were transferred to him even if only for a short time. Brown says that he was. merely “interposed” between Mohawk. Corporation and Mabro Oil Company, but cites no law to show that such a person is not bound by the agreement he makes.
*640 Brown attempts to avoid the effect of' the royalty provision by interpreting it to mean not that the assignors would participate in any lease taken within a year from the expiration of the first lease, but that they would participate in á second lease for a year after the expiration of the first lease. This meaning is a strained and unreal one and would be completely contrary to the obvious purpose of the provision.
In an attempt to show their diligence and promptness in making their claim, appellants called witnesses for the purpose of establishing when they first had knowledge that oil and gas had been produced from-the property covered by this second lease and of showing that they had communicated with the appellee within three months after they had been informed that production had occurred on the property, setting forth and claiming their interest, but upon objection of appellee’s counsel these witnesses were not permitted to testify.
Appellants prayed that they be recognized as owners in indivisión of a interest in % of the oil, gas, and other minerals produced under the second lease. However, from the record we are not able to determine the respective interests of appellants Mary Jane Berman, P. & J. Realty Company, and James F. Turnbull, and under these circumstances we propose to recognize the interests of appellants Mirandona and Chauvin and reserve to the other appellants the right to assert against Mirandona and Chauvin any. rights they may have to the Vie royally of Mirandona and Chauvin.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that appellants Henry P. Mirandona and Robert J. Chauvin be recognized as the owners in indivisión of a Vie interest in % of the oil, gas, and other minerals under the mineral lease' executed by the D. V. Doussan Oil & Planting Company of Lafourche, Inc., to Joe W. Brown on June 26, 1944, recorded in C.O.B. Ill, Folio 505, of the records of the Parish of Lafourche, Louisiana, and that Joe W. Brown account to these appellants for their Vie of the % of all oil and gas produced under this lease.
It is further ordered that the right be reserved to the appellants Mary Jane Berman, P. & J. Realty Company, and James F. Turnbull to assert against Mirandona and Chauvin any rights they may have to the Vie royalty interest of Mirandona and Chauvin.
Appellee Joe W. Brown is to pay all costs.
FOURNET, C. J., and PONDER, J., dissent.
HAMITER, J., is of the opinion that defendant’s plea of estoppel should be sustained.