## DEES v. HUNT OIL CO.
### Civ. A. No. 4538.

United States District Court
W. D. Louisiana, Shreveport Division.
July 21, 1954.

Simon Herold, Shreveport, La., for plaintiff.

Riley B. Fell, C. E. Hall, Shreveport, La., for defendant.

DAWKINS, Jr., Chief Judge.

Filed in the State Court, and removed here [1] by defendant, the action is for full cancellation of an oil, gas and mineral lease, plus $45,000 in alleged damages and attorney's fees. Alternatively, should the lease be held not cancellable in full, the prayer is for its restriction to a substantially lesser undivided interest (187.-50 acres) than the whole property (450 acres) covered by it.

In substance, the complaint alleges: Plaintiff, as the widow, since remarried, and judicially recognized heir of the late E. M. Pyle, standing in his place, is the owner of: SE¼ SW¼ NE¼ and SE¼ less and except the N½ of NE¼ of SE¼ Section 33, W½ of W½, SE¼ of SW¼ and S½ of NE¼ of SW¼, South ¾ of SE¼ lying West of Westerly Line of the Greenwood-Bethany Highway, Section 34, all in Township 17 North,

---

1. After due consideration, we overruled a motion to remand. There is jurisdiction here under the Removal Statute: plaintiff is a Louisiana citizen; defendant is a corporate citizen of Delaware; more than $3,000 is in actual controversy.

Range 16 West (Caddo Parish, Louisiana).

On January 13, 1947, Mr. Pyle executed in favor of defendant an oil, gas and mineral lease, for a primary term of ten years, covering this property. A certified copy of the lease is attached to and forms part of the complaint. On that date Pyle "was the fee owner of the 450 acres described in the lease but owned only a 187.50 acre undivided interest in the mineral rights". The lease "was purchased for a cash bonus of Fifteen ($15.-00) Dollars per acre and an annual delay rental of $1.00 per acre per year".

On September 25, 1953, plaintiff notified defendant "by registered mail that all of the outstanding mineral rights had now reverted to her". Defendant then "requested proof that the minerals had expired and affidavits substantiating this fact were furnished" to it. All delay rentals due prior to January 13, 1954, had been paid; but, allegedly disregarding the information furnished, defendant deposited delay rentals, on or before that date, in the sum of $187.50 "and refused to pay the $450.00 rental".

On February 11, 1954, through her attorney, plaintiff requested a release of the lease "because of failure to properly pay the delay rentals". Defendant declining to do so, this suit followed.

Moving to dismiss for failure to state a claim, defendant stands squarely upon the lease itself as full refutation of plaintiff's claims.

■ Of course, the lease governs the rights of the parties. In so far as there may be conflicts between its plain terms and plaintiff's contentions, the former are controlling and the latter must be disregarded.

The lease was granted for a cash bonus of $2,612.50. It called for annual delay rentals, in lieu of development, in the sum of $187.50. Paragraph 12 of the lease reads as follows:

"12. This lease covers not only such interests in leased premises as the party constituting Lessor presently owns therein but also such additional interests as he may acquire in the future by operation of the law or otherwise, and there shall be no increase in rental in order to maintain this lease in force without drilling during its primary term in the event of the acquisition by said party of such additional interest. However, in the event of the production of oil, gas or other minerals from any part of leased premises, the royalties payable in that event shall be divided among the parties constituting Lessor, their successors or assigns, in the proportion in which the interest of each of said parties in the minerals in any part of leased premises bears to the whole of the minerals in the entire leased premises."

■ In an effort to escape the obvious import of this provision, plaintiff argues 1) that under Paragraph 10 of the lease defendant was *required* to *reduce* the amounts paid as delay rentals if the lessor owned less than the entire interest in the property; that this was not done by defendant; consequently, that the amounts paid as rentals were for no more than the original 187.50-acre mineral interest owned by Pyle when the lease was executed, and did not cover the additional 262.50-acre interest acquired later; and 2) that an oil, gas and mineral lease legally is the same as a mineral servitude; and since a reversionary interest in mineral servitudes cannot be reserved [2], so as to create a servitude upon a servitude, a mineral lease validly cannot be made affecting a future reversionary interest.

Neither point will do, in our judgment. Paragraph 10 of the lease reads:

"10. Lessor hereby warrants and agrees to defend the title to said land and agrees that lessee at its option may discharge any tax, mortgage or other lien upon said land

---

**2.** Liberty Farms v. Miller, 1950, 216 La. 1023, 45 So.2d 610; Hicks v. Clark, 1954, 225 La. 133, 72 So.2d 322.

and in event lessee does so, it shall be subrogated to such lien with the right to enforce same and apply rentals and royalties accruing hereunder toward satisfying same. *Without impairment of lessee's rights under the warranty in event of failure of title, it is agreed that if lessor owns an interest in said land less than the entire fee simple estate, then the royalties and rentals to be paid lessor shall be reduced proportionately."* (Emphasis supplied.)

This is simply a standard warranty clause intended solely for the lessee's protection. It in no way increases the lessee's obligations or adds to the lessor's rights. If the lessee chooses to pay a larger delay rental than required by the lease, the lessor surely cannot complain. Only in case a smaller amount is paid than the minimum stipulated, or no payment is made, does the latter have grounds for cancellation.

Even when taken out of context, and not considered—as it must be—with all other provisions, Paragraph 10 does not stand for the proposition plaintiff contends it does. Viewed in its entirety, the lease clearly shows that lessor 1) intended to lease to defendant all of his presently owned or future acquired mineral interests, 2) for $187.50 per annum, 3) regardless of the extent of those interests. Defendant may not reduce, but is not required to increase, payments of delay rentals. In the event of production, however, it can pay royalties according to actual ownership of the minerals: if plaintiff then owns all the minerals, this would be a full one-eighth; if a lesser interest, then the proportionate part of one-eighth that plaintiff's actual interest bears to the whole.

With respect to plaintiff's second point, no Louisiana cases have been cited, and we know of none, directly or indirectly supporting her position. While it is true that at times the Louisiana Courts loosely have referred to oil, gas and mineral leases as "servitudes", and that a reversionary interest in mineral servitudes cannot be reserved because "a servitude upon a servitude" would be created thereby[3], yet it is a firmly established principle of our State law that mineral *leases* must be construed as *leases,* and that the codal provisions applicable to *ordinary leases* must be applied.[4]

---

3. Cases cited in Footnote 2.

4. Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679, 681:

"From the inception of litigation with respect to mineral contracts and their interpretation, the articles of the Civil Code specifically covering the contract of lease (under Title IX, 'Of Lease,' Chapter 2, 'Of Letting Out Things'), together with other articles applicable to the ordinary lease under 'Conventional Obligations,' 'Privileges' and 'Prescription,' have been consistently applied to mineral contracts possessing the characteristics of lease. For example, a lease affecting the whole property where the lessor was the owner of but an undivided interest was held valid under Article 2682, Spence v. Lucas, 138 La. 763, 70 So. 796; the lessor's lien and privilege to secure rentals was recognized under Articles 3218 and 3219, Logan v. State Gravel Co., 158 La. 105, 103 So. 526; cancellation of gas lease for nonpayment of rent when due was ordered under Articles 2046, 2047, 2710, 2712 and 2729, Louisiana Oil Ref. Corp. v. Cozart, 163 La. 90, 111 So. 610; the prescription of three years against a claim for arrearage of rent in the form of additional royalties was applied under Article 3538, Board of Com'rs of Caddo Levee Dist. v. Pure Oil Co., 167 La. 801, 120 So. 373; characteristics of a sublease as distinguished from an assignment were determined by application of Article 2725, Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264; remedy of a lessee in the case of disturbance of his possession was concluded under the provisions of Articles 2703 and 2704, Gulf Refining Co. of La. v. Glassell, 186 La. 190, 171 So. 846; the duration and conditions of such leases were held to come within the rule announced in Article 2684, Coyle v. North American Oil Consolidated, On Rehearing, 201 La. 99, 112, 9 So.2d 473; and the lessor was required to fulfill the obligations enumerated in Article 2692. Texas Co. v. State Mineral Board, 216 La. 742, 44 So.2d 841.

Turning, therefore, to Title IX of the LSA–Civil Code, wherein articles on the subject of "Lease" are found, we note the following provisions: a) Article 2681: "He who possesses a thing belonging to another, may let it to a third person, * * *"; b) Article 2682: "He who lets out the property of another, warrants the enjoyment of it against the claim of the owner."; c) Article 2684: "The duration and the conditions of leases are generally regulated by contract, or by mutual consent."; d) Article 2686: "The parties must abide by the agreement as fixed at the time of the lease * * *".

These articles, and Paragraph 12 of the lease, are a complete answer to plaintiff's contentions. The lease is an act under private signature, proved by the affidavit of an attesting witness. As such it has the force of an authentic act, Le Boeuf v. Duplantis, La.App.1935, 162 So. 592, citing Article 2242, LSA–C.C. and Act 68 of 1914, now LSA–R.S. 13:3720.

Article 2236 of the Code provides: "The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."

"In one of the early cases, decided almost twenty-five years ago when the members of the Court were trying to determine the law applicable to a mineral contract of lease, while it was said that 'This is not an ordinary lease. It is more in the nature of a license,' nevertheless the holding was that 'it is governed by the Codal provisions relative to leases.' Louisiana Oil Refining Co. v. Cozart, supra, 163 La. at page 93, 111 So. at page 610. The view was subsequently affirmed, so that in a later case the following language was used: 'We stress the fact that in every instance where the court had squarely before it the juridical nature or the proper legal classification of a mineral, oil, and gas lease the conclusion was reached that it was a contract of letting and hiring * * *.' Gulf Refining Co. of La. v. Glassell, supra, 186 La. at page 200, 171 So. at page 849. The following excerpt shows the uniformity of the jurisprudence in this respect: 'This court has consistently applied the codal provisions, whenever possible, to oil and gas leases for many years. Having declined * * * to adopt a Mineral Code, the Legislature has placed the stamp of approval upon the system of interpretation of oil and gas contracts which this court has followed for so many years.' Tyson v. Surf Oil Co., 195 La. 248, 268–269, 196 So. 336, 343, and in a recent case we observed: *The rule is well established that mineral leases must be construed as leases, and that the codal provisions applicable to ordinary leases must be applied.*' Coyle v. North American Oil Consolidated, supra, 201 La. [99], at page 114, 9 So.2d [473], at page 478—italics ours.

"[1] Under this application of the law, it was inevitable that when the question arose as to the nature of royalty, it was held to be *rent* in the form of a portion of the produce of the land, Logan v. State Gravel Co., supra, and 'not the payment of a price for the oil or gas rights, as if they were sold', Roberson v. Pioneer Gas Co., supra, 173 La. [313], at pages 319–320, 137 So. [46], at page 48; and the statement that the payment of royalty is the payment of rent appears so often in the jurisprudence of this State that the matter is no longer open to dispute. See Board of Com'rs of Caddo Levee District v. Pure Oil Co., supra; Roberson v. Pioneer Gas Co., supra; Shell Petroleum Corp. v. Calcasieu Real Estate & Oil Co., Inc., 185 La. 751, 170 So. 785; Parker v. Ohio Oil Co., 191 La. 896, 186 So. 604; Robinson v. Horton, 197 La. 919, 2 So.2d 647. Thus we said that although the products of mines and quarries, once taken, would not be reproduced, nevertheless they *'are products of the land,* and *products* may be assimilated to *fruits,* within the meaning of R.C.C. art. 2671. * * * for "rent [by whatever name called] is a certain profit in money, provisions, chattels, or labor, issuing out of lands and tenements in retribution for the use." King v. Harper, 33 La.Ann. 496.' Logan v. State Gravel Co., supra, 158 La. [105], at page 109, 103 So. [526], at page 527."

See also Berman v. Brown, 224 La. 619, 70 So.2d 433, wherein the Louisiana Supreme Court applied the Civil Code provisions relative to predial leases to an oil, gas and mineral lease.

And Article 2276 reads: "Neither shall parole evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."

Consequently, parole evidence is inadmissible to vary, alter or contradict the terms of this lease.

Assuming, as we must, the verity of all facts alleged in the complaint, not in conflict with the lease itself, and disregarding, as we must, those which would attempt to dispute its terms, we find that the clear, unambiguous language of Paragraph 12 authorized defendant to do exactly what plaintiff says it did.

In the final analysis, there is no dispute presented here as to the applicable, legally admissible facts. Plaintiff's position on the law is as unsound as defendant's is sound. The latter was entirely within its rights in doing, or refusing to do, the things plaintiff charges against it.

The motion is good. It is sustained. Present decree accordingly.