YELVERTON, Judge.
Daniel Oil Company and other working interest owners in an oil well, having sued two defendants and their insurers for damages caused by a well blowout, appeal a summary judgment dismissal of one defendant, Tesoro Land & Marine Rental Company, contending that the evidence does not support a summary judgment in that defendant’s favor. We agree, and reverse and remand for further proceedings.
Plaintiffs filed suit against Signal Rental Tools & Oilfield Services, Inc. (Signal), and Tesoro Land & Marine Rental Co. (Tesoro), and their insurers. The petition alleged that the plaintiffs were working interest owners in certain mineral leases which comprised the North Roanoke Prospect on which the Cook No. 1 Well was drilled in Jefferson Davis Parish; that in connection with the drilling of the well, defendant Signal rented and/or leased to Daniel Oil Company certain tubing which was placed in the well; that Signal had rented and/or leased the tubing from Tesoro; that on June 2, 1981, the tubing leased from Signal failed, causing a blowout in the well; that the tubing was defective; and that the defendants were liable for damages in tort or under breach of contract. Tesoro answered generally denying the plaintiffs’ allegations. It further answered that the damage was caused by the plaintiffs’ negligence; that plaintiffs voluntarily assumed the risk; and that plaintiffs had waived any and all liability on the part of Signal and Tesoro and assumed liability for all losses such as claimed in the petition.
Tesoro then also filed a motion for summary judgment, alleging that the terms of the lease between Tesoro and Signal included a waiver of liability in which Signal assumed all liability arising out of the lease, including liability arising out of torts or breach of contract. Signal, and its insurer, likewise filed motions for summary judgment alleging Signal gave no express or implied warranties in connection with the furnishing of materials to Daniel Oil. The motions were heard, and the district court granted Tesoro’s motion for summary judgment, dismissing it from the lawsuit, but the court denied Signal’s motion for summary judgment.
The summary judgment for Tesoro was based on the following reasoning by the trial court: Signal leased the tubing from Tesoro, and Daniel Oil leased it from Signal. Consequently, Daniel Oil could have no greater rights against Tesoro than Signal had. Signal made a knowing waiver of all warranties when it leased the equipment *528 from Tesoro. Therefore, Daniel Oil cannot assert any action against Tesoro.
Appellants contend on appeal that the waiver of warranty in the contract between Tesoro and Signal had no effect on the relationship between appellants and those parties. Appellants also argue that the summary judgment evidence does not foreclose their contract rights and tort claims against Tesoro, and that the summary judgment should not have been granted.
Before discussing these contentions we will first examine the summary judgment evidence, which consisted of affidavits and attached documents. The affidavit of M.E. Douglas, division manager of Tesoro, established that Tesoro rented tubing to Signal. The invoice, delivery ticket, and manual provided to Signal all contained waivers of warranty. After Tesoro transferred the tubing to Signal, Tesoro personnel did not have further contact with the tubing. Te-soro was not the manufacturer. Before the rental to Signal the tubing was visually inspected according to normal Tesoro procedure. The tubing was then pressure-tested by Cooper Testing. Then Tesoro had the tubing electronically tested for defects and thickness. The tubing again was visually inspected, and an inside diameter drift indicator was run through it to check for thickness of walls and mashed areas. According to this affiant, the tubing Signal leased from Tesoro consisted solely of joints that passed all of the foregoing tests and inspections.
The attached testing results by Cooper Testing show that the various joints were tested in April and May of 1981. (The tubing was put in plaintiffs well in early June 1981.) Of the 501 joints tested on April 10 and April 21 only 448 joints were found to be good. According to another April 24 report, of 363 joints tested, 11 were rejected and 352 were found to be premium although, of these, 50 tested crooked. In May, 42 joints were tested and only one was found to be crooked.
According to the affidavit of Henry C. Harrison, Jr., Signal’s .president, Signal is in the business of renting tools for energy purposes. In early 1981 he met with Fred Nassar of Daniel Oil in Houston to solicit business from Daniel for tool rentals in connection with drilling operations in the Lafayette area. At that time he gave Nas-sar a copy of the price list which set forth the terms and conditions of the rental of equipment. On various occasions after-wards, Signal leased equipment to Daniel Oil, and on each occasion the form used contained a waiver of warranty. On May 14, 1981, he received a call from Bob Babi-neaux, drilling foreman for Daniel Oil, who ordered certain equipment, including tubing, to be delivered on May 16. He advised Babineaux that Signal did not keep tubing in stock, and that it would have to be ordered from others and subleased to Daniel Oil. Babineaux replied that as long as the tubing had been tested, that was fine. The affiant called a representative of Teso-ro and was advised that tubing which had been tested was available and ready for use. He then ordered the tubing and subsequently received the test reports. He arranged for a trucking company to pick up the tubing from Tesoro on May 16. The truck then picked up additional equipment at Signal and delivered the whole load to the Cook No. 1 well site. After the tubing was delivered to Daniel Oil, the affiant said that Signal had no further contact with the tubing.
The exhibits show that Signal delivered 378 tubing joints to Daniel Oil on May 16, 1981. The delivery ticket from Tesoro shows that Tesoro rented the 378 tubing joints to Signal on that date.
The affidavit of A.M. Nassar, Vice President of Drilling & Production for Daniel Oil, indicated that in May 1981 he ordered for lease from Harrison of Signal certain oilfield equipment, including joints of tubing. He specifically instructed Harrison that all tubing must be electronically tested and approved before delivery and Harrison agreed to this condition. Affiant declared that he never was provided any electronic test certificates, although Mr. Harrison assured him that the tubing had been tested. After the blowout, the test certificates re *529 ceived from Signal indicated the tubing had not been electronically tested, and Harrison informed him of this and acknowledged that the tubing should have been electronically tested.
Nassar’s affidavit went on to say that after the blowout, the tubing provided by Signal was electronically tested by Plastic Applicators and numerous joints were found to be defective and unfit for use. He further stated that no operations performed on the well by Daniel Oil using the tubing could have contributed to a reduction in wall thickness or otherwise render the tubing unfit during the time of its possession.
The attached test certificates by Plastic Applicators indicated that 55 out of 282 joints tested were rejected as unfit.
The pleadings, and the above affidavits and exhibits, constitute the summary judgment evidence in the case, and it is on this evidence that we must determine whether there is a genuine issue as to material fact, and whether Tesoro was entitled to judgment as a matter of law. As this court stated in Chargois v. Trip-L-Quik, 441 So.2d 45 (La.App. 3rd Cir.1983):
A motion for summary judgment should be granted only if “... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” LSA-C.C.P. art. 966; Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976), writ denied, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). Only when reasonable minds must inevitably concur, as a matter of law, on the facts before the court is a summary judgment warranted, and any doubt is resolved against the granting of a summary judgment and in favor of a trial on the merits. Clement v. Taylor, 382 So.2d 231 (La.App. 3rd Cir.1980). The likelihood that a party will be unable to prove his allegations upon trial on the merits does not constitute a basis for rendering a summary judgment. Teledyne Movible Offshore, Inc. v. C & K Offshore Company, 376 So.2d 357 (La.App. 3rd Cir.1979).
On a motion for summary judgment, the court must first determine whether the supporting documents presented by the moving party are sufficient to resolve all material fact issues. If they are not sufficient, summary judgment must be denied. Only if they are sufficient does the burden shift to the opposing party to present evidence that material facts are still at issue, and only at this point may he no longer rest on the allegations and denials contained in his pleadings. Begnaud v. Pedestal Crane, Inc., 408 So.2d 24 (La.App. 3rd Cir.1981).
In the present case we are concerned with whether or not there is a genuine issue of material fact as regards appellants’ claims under breach of contract and in tort as against Tesoro.
. Regarding appellants’ claim under breach of contract, the facts are undisputed that Tesoro leased the tubing joints to Signal, that Daniel Oil was not a party to that contract, that Signal then leased the tubing joints to Daniel Oil, that Tesoro was not a party to that contract, and that there is no provision in the lease to Daniel Oil which operated as an assignment of Signal’s rights under its lease.
Daniel Oil is merely a sublessee of the tubing joints. The rights of a sublease are derived only from the terms of the sublease. Ducote v. Callico, 307 So.2d 644 (La.App. 4th Cir.1974), writ denied 309 So.2d 337 (La.1974). The sublease in question does not assign Signal’s rights against Tesoro to Daniel. Since there is no contractual relationship between the original lessor and the sublessee, Daniel Oil must assert its breach of contract claim against its lessor, Signal, only. See Audubon Hotel Co. v. Braunnig, 120 La. 1089, 46 So. 33 (1908); Berman v. Brown, 224 La. 619, 70 So.2d 433 (1953); Pepper v. Pyramid Oil & Gas Corporation, 287 So.2d 620 (La.App. 3rd Cir.1973). Daniel Oil has no contract claim against Tesoro.
*530 Although a cause of action based on breach of contract does not exist, this does not preclude Daniel Oil from asserting a claim for damages based on tort against Tesoro. See Gurtler, Hebert and Company, Inc. v. Weyland Machine Shop, Inc., 405 So.2d 660 (La.App. 4th Cir.1981); writ denied 410 So.2d 1130 (La.1982). A subles-see has a direct action against the original lessor for his torts. Audubon Hotel Co. v. Braunnig, supra.
In the present case the plaintiffs have alleged that Tesoro is strictly liable for the property damage they suffered under the provision of LSA-C.C. Art. 2317 and under general allegations of negligence under LSA-C.C. Art. 2315. We now must determine whether a genuine issue of material fact exists as to these claims.
LSA-C.C. Art. 2317 provides in pertinent Part:
“Art. 2317. Acts of others and of things in custody.
“Art. 2317. We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody....”
In Goudchaux v. State Farm Fire & Casualty Company, 407 So.2d 1317 (La. App. 3rd Cir.1981) this court stated:
“For recovery under LSA-C.C. Article 2317, a plaintiff must show: (1) that the thing which caused the injury was in the care or custody of the defendant/owner; (2) that a vice or defect existed in the thing; and, (3) that the vice or defect caused the injury. A vice or defect is defined as one which creates an unreasonable risk of injury to another. Loescher v. Parr, 324 So.2d 441. (La.1975); Reinhard v. City of New Orleans, 371 So.2d 286 (La.App. 4 Cir.1979).”
In the present case there are genuine issues of material fact as to whether a defect existed in the tubing joints and whether the defect, if any, caused the damage. Tesoro’s exhibits allege that the tubing joints passed all test inspections for defects. However, Daniel’s exhibits reveal a large part of the equipment, including the tubing joints placed in the well, were defective and unfit for use.
Tesoro contends that Daniel Oil had the care and custody of the equipment at the time of the accident; therefore, Tesoro contends it cannot, as a matter of law, be held responsible under LSA-C.C. Art. 2317. We disagree. There is a genuine issue of material fact as to whether Tesoro, or Daniel Oil, had the care and custody of the tubing joints, as demonstrated by the reasoning in the following two cases.
In Cardwell v. Jefferson Rentals Division of J-R Equipment Corporation Assurance Company, 379 So.2d 255 (La.App. 4th Cir.1979), writ application withdrawn, 382 So.2d 164 (La.1980), defendant had rented a chain hoist to another firm for use by its employees. One of the employees picked up the chain hoist from defendant one day for use the next morning. The chain hoist broke almost immediately after being put to use, causing injury to two persons. The court found the relationship between the lessee and the thing was insufficient to support a finding that the care and custody of the thing had been transferred from the lessor to the lessee.
Similarly, in Goudchaux v. State Farm Fire & Casualty Company, 407 So.2d 1317 (La.App. 3rd Cir.1981), a homeowner rented a sewer auger from a rental company to clear out some blockage in his sewer line. The auger was defective and a neighbor helping the homeowner use the machine was injured. The neighbor sued the homeowner under LSA-C.C. Art. 2317. The court found that the rental company, which had the responsibility for maintaining the machine, had the direction and control over the sewer auger and derived benefits from its rental, and, therefore, the homeowner’s relationship to the sewer auger was insufficient to result in the imposition of strict liability under LSA-C.C. 2317, even though he was in possession of the machine at the time of the accident and had used the machine prior to the accident.
*531 In the present case it is clear that Tesoro had the responsibility for maintaining the tubing joints. However, the summary judgment facts do not show whether or not Daniel Oil’s possession and control of the joints was sufficient to say that there had been a transfer of the custody and care of the joints from Tesoro to either Signal or Daniel Oil. For this reason we find that the trial court erred in granting Tesoro’s motion for summary judgment. Because the summary judgment is being reversed for this reason alone, we pretermit a discussion as to Daniel’s claim against Tesoro based on negligence.
For these reasons, the summary judgment in favor of Tesoro is reversed, and the case is remanded to the trial court for further proceedings. Costs of this appeal are to be paid by Tesoro.
REVERSED AND REMANDED.