463 So.2d 1384 (1985)
A.J. ROBINSON, Jr., Plaintiff-Appellant,
v.
NORTH AMERICAN ROYALTIES, INC., David C. Bintliff, and the Stone Oil Corporation, Defendants-Appellees.
No. 84-102.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1985.
Rehearing Denied March 8, 1985.
*1385 Simon, Peragine, Smith & Redfearn, Robert L. Redfearn and Judy P. Martinez, New Orleans, for plaintiff-appellant.
Gordon, Arata, McCollam & Stuart, Ballard E. Harris, Liskow & Lewis, Charles B. Griffis, Lafayette, for defendants-appellees.
Before DOMENGEAUX, STOKER and KING, JJ.
DOMENGEAUX, Judge.
On March 13, 1978, Edna Petitjean Lacour, N. Curtis Petitjean, W. Petitjean & Company, Irene M. Petitjean, Henrietta Bourgaux Petitjean, Martin Petitjean, II, Winson J. Petitjean, Jr., and Jeanne M. Petitjean, ("the Petitjeans") granted an oil, gas, and mineral lease to the plaintiff, A.J. Robinson, Jr., covering approximately 579 acres in Acadia Parish. This lease will hereinafter be referred to as the Petitjean lease.
Subsequently, on March 30, 1978, the plaintiff "assigned" his interest in the Petitjean lease to North American Royalties, Inc. and David C. Bintliff (collectively "North American") reserving an overriding royalty interest of an undivided 1/100th of 8/8ths. One of the contract stipulations is an extension clause (commonly referred to as an anti-washout provision) which provides that the overriding royalty interest reserved by Robinson would also apply to any new mineral leases acquired by North American or its successors or assigns covering any of the 579 acres covered by the original Petitjean lease, if acquired within one year from the expiration of the Petitjean lease. This "assignment" will hereinafter be referred to as the Robinson agreement.
By instrument dated August 25, 1980, pursuant to a farm out agreement dated August 10, 1978, North American Royalties, Inc., et al "assigned" to the Stone Oil Corporation 60% of its interest in the Petitjean lease only insofar as said lease covered land located within a production unit established by the Louisiana Office of Conservation and designated as the 13,850 foot RA SU A. This "assignment" contained a provision which states that Stone Oil accepted the "assignment" of the Petitjean lease "subject to such interest's proportionate part of all overriding royalties, ... and... agreements of record." [1] This "assignment" will hereinafter be referred to as the North American Agreement.
Due to North American's decision not to pay delay rentals, the Petitjean lease expired on March 13, 1983, insofar as it covered lands outside the 13,850 foot RA SU A conservation unit. The Petitjean lease has been maintained within the unit because of production in paying quantities. Robinson is being paid an overriding royalty for that production.
Shortly thereafter, on March 17, 1983, the Petitjean family granted an oil, gas, and mineral lease to Stone Oil (the Stone Oil lease) covering a portion of acreage previously covered by the Petitjean lease and lying outside of the 13,850 foot RA SU A unit.
The plaintiff, A.J. Robinson, Jr., after making amicable demand, filed suit against North American Royalties, Inc., David C. Bintliff, and the Stone Oil Corporation, claiming that he is entitled to an assignment of a 1/100th of 8/8ths overriding royalty interest over the Stone Oil lease.
Stone Oil filed an "exception of no cause and/or right of action" which was sustained *1386 by the trial court. Plaintiff's action was dismissed.
At this juncture we must point out that although the Robinson agreement and the North American agreement are designated as assignments they are in fact subleases. In each of those agreements the "assignor" retained an overriding royalty. In the situation where a lessee reserves an overriding royalty when making a purported assignment of the lease, the "assignment" is in legal effect a sublease. Pepper v. Pyramid Oil & Gas Corporation, 287 So.2d 620 (La.App. 3rd Cir.1974), and Mc-Donald v. O'Meara, 139 So.2d 282 (La.App. 1st Cir.1962).
The plaintiff-appellant asserts three specifications of error on this appeal:
(1) That the district court erred in granting a judgment of dismissal on an "exception of no cause and/or right of action".
(2) That the district court erred in holding that no cause of action exists in favor of Robinson.
(3) That the district court erred in holding that no right of action exists in favor of Robinson.

SPECIFICATION OF ERROR NO. 1:
Robinson contends that the district court should not have rendered a judgment on Stone Oil's "exception of no cause and/or right of action" because there is no such exception under Louisiana law. Plaintiff argues that La.C.C.P. Art. 927, in setting forth the available peremptory exceptions, lists separately the exception of "no cause of action" and the exception of "no right of action" and therefore each deserves a separate consideration and an individual determination.
We agree that there is no such exception as an "exception of no cause and/or right of action". Randall v. Jena Wire & Cable Company, 415 So.2d 564 (La.App. 3rd Cir.1982). We do have an exception of "no cause of action", La.C. C.P. Art. 927(4) and an exception of "no right of action", La.C.C.P. Art. 927(5) which are distinct exceptions subject to different rules. Although the exceptor in this case did not employ the proper terminology in styling his exception and although such loose pleading is not to be condoned or encouraged, for purposes of this appeal we shall treat Stone Oil's pleading as an attempt to urge both of the described exceptions. See Randall, supra, and A. Copeland Enterprises, Inc. v. R. Jones Enterprises, Inc., 433 So.2d 1066 (La.App. 5th Cir.1982), writ denied, 435 So.2d 426 (La. 1983).

SPECIFICATION OF ERROR NO 2:
The appellant argues that the district court erred in holding that he did not have a cause of action.
The exception of no cause of action is a procedural device pleaded to raise the question of whether any remedy is afforded by law. Peloquin v. Calcasieu Parish Police Jury, 367 So.2d 1246 (La.App. 3rd Cir.1979).
"The purpose of the exception of no cause of action is to test the legal sufficiency of the pleadings. Well pleaded facts alleged in the petition are taken as true. If any reasonable construction of the alleged facts could lead to possible legal recovery, the exception must be overruled. Normally, evidence may not be considered for the purposes of sustaining an exception of no cause of action. The exception can be sustained only when the allegations, as stated in the petition, affirmatively establish that no relief can be granted under the law."
Ford Motor Credit Company v. Soileau, 357 So.2d 563 (La.App. 3rd Cir.1978) [Citations omitted].
The basis of this controversy centers on the provision in the Robinson agreement which provides:
"It is further expressly agreed and understood that the overriding royalty interest herein reserved and retained by GRANTOR [Robinson] shall be applicable and extend to the renewal or extension of the hereinabove described oil, gas and mineral lease or to any new oil, gas and mineral lease obtained or acquired, directly or indirectly, by, for and on behalf of GRANTEE [North American Royalties, *1387 Inc., et al], its successors or assigns, covering and affecting any of the lands covered by the hereinabove described oil, gas and mineral lease within one (1) year after the expiration and termination of the said oil, gas and mineral lease."
The Petitjeans granted an oil, gas and mineral lease to Stone Oil over property which was originally covered by the lease the Petitjeans granted to Mr. Robinson. The lease was acquired by Stone Oil within one year from the expiration of the original Petitjean lease.
The plaintiff argues that the above quoted provision contained in the Robinson agreement entitles him to an overriding royalty interest over the property covered by the Stone Oil lease. Robinson asserts that Stone Oil is a successor or assign of North American and as Stone Oil leased land which was originally contained in the Petitjean lease it is obligated to recognize the overriding royalty.
Stone Oil filed a peremptory exception of "no cause and/or right of action" contending that the holding in Berman v. Brown, 224 La. 619, 70 So.2d 433 (La.1953) precludes plaintiff's recovery. The crux of Stone Oil's argument is that there is no privity of contract between Stone Oil and Robinson and therefore as the original Petitjean lease has expired as to the lands not contained within the 13,850 foot RA SU A unit those lands outside the unit and covered by the Stone Oil lease are not subject to the extension provision in the Robinson agreement.
The district court granted the exception and dismissed the plaintiff's case. In an oral opinion, which was transcribed, the district judge stated:
"The court finds that the Berman case is controlling in this matter and that Stone Oil Company did not expressly assume the obligations in the sublease of their sublessors; and further that the Article 128 of the Mineral Code does not, in my opinion, overrule Berman ..."
The exception of no cause of action is the proper procedural device for asserting that the law does not afford a remedy to the plaintiff because there is a lack of privity of contract. Louisiana Paving Company v. State, Department of Highways, 372 So.2d 245 (La.App. 1st Cir.1979).
Berman v. Brown, supra, and the instant case present us with the rare situation where the essential facts addressed in the prior jurisprudence (Berman) are "on all fours" with the facts involved in the case at hand.
In both Berman and in the present case, a lessee is demanding overriding royalty payments from a subsequent sublessee. In both cases the parties seeking the overriding royalty had an extension clause recorded in their favor. In both cases a sublease rather than an assignment is involved and in both cases the original lease on which the demand for overriding royalties is based has expired. Furthermore, in each case the sublessee has contracted a mineral lease with the original lessor which affects lands previously covered by the original lease and this new lease is the subject of the lawsuit. Also similar is that both cases involve a situation where the sublessees acquired an interest in the original lease "subject to" the lessee's reservation.[2]
In Berman, supra, our Supreme Court held that the sublessee once removed was not obligated to pay overriding royalty payments to the lessee-sublessor.
The court premised this conclusion on the jurisprudential rule "that there is no contractual obligation by and between a lessor and a subtenant." Berman v. Brown, supra. The Supreme Court quoted from Taylor on Landlord and Tenant, 9th Edition, Section 16, to support its reasoning:
"[N]o action can be maintained by the lessor against the undertenant, upon any covenant contained in the lease, since there is neither privity of estate nor of contract between himself and the undertenant."
*1388 Relying on the above quoted rules of law the Berman court recognized that as there was no relationship, contractual or otherwise, between a lessor and a sublessee, it necessarily followed that there was no relationship between a sublessor and a sublessee once removed.
The High Court determined that since there existed no privity of contract by and between the lessee sublessor and a subsequent sublessee the extension clause was not binding upon that sublessee.
We are of the opinion that the major premise of Berman v. Brown has been legislatively overruled by the enactment of Article 128 of the Louisiana Mineral Code.
Article 128 of the Louisiana Mineral Code provides:
"To the extent of the interest acquired, an assignee or sublessee acquires the rights and powers of the lessee and becomes responsible directly to the original lessor for performance of the lessee's obligations."
We interpret Article 128 as the Legislature's creation of a code imposed privity of contract between a lessor and a sublessee in the mineral rights area. This code imposed privity of contract overrules the major premise of Berman. Logic therefore dictates that if there is privity of contract between a lessor and a sublessee, there exists privity of contract between a lessee-sublessor and a sublessee once removed.
In support of our holding that Article 128 of the Mineral Code overrules Berman v. Brown, supra, we maintain that the above quoted language of Article 128 must be considered in connection with the official reporter's comment to that article. Although not the law, the comments are supplied to assist the court in statutory interpretation. See Gunter v. Plauche, 428 So.2d 1094 (La.App. 1st Cir.1983), reversed on other grounds, 439 So.2d 437 (La.1983).
The assertion that Article 128 of the Mineral Code overrules Berman presented this Court with a res nova situation. Because of that fact, we are compelled to look to the comment for insight as to the legislature's intent in enacting Article 128. The comment to Article 128 of the Louisiana Mineral Code expressly states that the substance of that Article is "contrary to the theory of the jurisprudence evolved in [the] area" of subleases. The comment then notes Berman v. Brown as an example of Article 128's divergence from the established jurisprudence.[3]
However, as heretofore noted, the sublease which Stone Oil acquired from North American covered only the land located within the boundaries of the 13,850 foot RA SU A production unit. Stone Oil did not acquire a sublease on the acreage situated outside of the production unit. Article 128 of the Mineral Code indicates that a sublessee becomes responsible to the original lessor and by analogy to the original lessee only "[t]o the extent of the interest acquired" by the sublessee. As Stone Oil did not acquire an "interest" over the land outside of the geographical boundaries of the production unit when it acquired the sublease from North American, it cannot be said that Stone Oil assumed any obligations of the original lessee or his successors in this area.
We hold that there is no privity of contract between Robinson and Stone Oil as to the acreage covered by the Stone Oil lease and situated outside the geographical boundaries of the 13,850 foot RA SU A production unit. The Stone Oil lease is not burdened by the extension clause, and therefore, Mr. Robinson does not have a cause of action to assert against Stone Oil. It is our opinion that the trial court reached the right result but for the wrong reasons.

SPECIFICATION OF ERROR NO. 3:
The appellant contends that the district court was in error for dismissing his case *1389 based upon an exception of no right of action.
Our Supreme Court has recently elucidated upon the purpose of the exception of no right of action. In Teachers' Retirement System of Louisiana v. Louisiana State Employees' Retirement System, 456 So.2d 594 (La.1984), the High Court stated:
"La.C.C.P. art. 681 provides that `[e]xcept as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts.' That article is the basis for the peremptory exception of no right of action. La.C.C.P. art. 681. Official Revision Comment (b).
The peremptory exception of no right of action raises, then, the question of whether the plaintiff has any interest in judicially enforcing the right asserted. Lambert [v. Donald G. Lambert Construction Co., 370 So.2d 1254 (La.1979)], supra. The exception of no right of action is `a threshold device for terminating a suit brought by one without legal interest to assert it.' Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 at 334 (1972), quoting with approval Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3rd Cir.1967). See also Louisiana Law of Exceptions, 22 Loy.L.Rev. 90 (1975-76).
In Bielkiewicz, Judge Tate, then a judge of the Louisiana Court of Appeal, Third Circuit, explained the purpose of the exception of no right of action, later approved in Babineaux, 262 So.2d at 334.
`The want of interest raised by the exception relates primarily to whether the particular plaintiff falls as a matter of law within the general class in whose favor the law grants the cause of action sought to be asserted by the suit, with the factual evidence admissible being restricted as to whether this particular plaintiff does or does not fall within the general class having legal interest to sue upon the cause of action asserted.
* * * * * *
In short, the objection of no right of action raises the question of whether the plaintiff has a legal interest in the subject matter of the litigation, assuming (for the purpose of deciding the exception) that a valid cause of action is pleaded by the petition. LeSage v. Union Producing Co., 249 La. 42, 184 So.2d 727 [(1966)]. (Emphasis in original).' " Having reviewed the nature and purpose of the exception of no right of action, we hold that the trial court committed error insofar as it maintained an exception of no right of action and insofar as it dismissed plaintiff's case on that basis. This error will not affect the outcome of this case because we find that the plaintiff had no cause of action, and it was proper for the trial court to dismiss the case on that basis. The plaintiff Robinson is claiming ownership of an overriding royalty interest on the lands covered by a mineral lease acquired by Stone Oil Company. Plaintiff is a person with the interest, and therefore the right, to assert the cause of action he claimed to have.
For the foregoing reasons we reverse the trial court's judgment dismissing the plaintiff's action insofar as it was based on sustaining the exception of no right of action; we affirm the trial court's judgment dismissing plaintiff's action based on the exception of no cause of action.
All costs, both at trial and on appeal are assessed against plaintiff-appellant.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] Although the record does not contain a copy of the agreement whereby North American "assigned" a percentage of its interest to Stone Oil, both Robinson and Stone Oil refer to the "subject to" language in their briefs. We therefore conclude that the parties admit that the agreement exists and that the "subject to" language is contained therein.
[2] In Berman the sublessee accepted the sublease "subject to" the appellants' "royalty interest". Here, Stone Oil accepted the sublease "subject to such interest's proportionate part of all overriding royalties ... and ... agreements of record."
[3] Support for our holding can be found in Professor John N. McCollam's article A Primer for the Practice of Mineral Law Under the New Louisiana Mineral Code, 50 Tul.L.Rev. 732. In that article, Professor McCollam advances the proposition that article 128 of the Mineral Code "could be the basis of a code-imposed privity of contract" resulting in the reversal of the holding in Berman v. Brown, supra.